### JONES v. GOULD STEAMSHIPS & INDUSTRIALS, Limited, et al.

(Circuit Court of Appeals, Fourth Circuit. January 16, 1926.)

No. 2384.

Shipping ⬳86(2)—Circular of British Board of Trade, requiring gratings on coal trimmers' escape hatches, could not be given effect, in absence of evidence of effect given thereto by British law.

Where there was no evidence of effect given by British law to circular of instructions issued by British Board of Trade, requiring gratings on coal trimmers' escape hatches, and evidence indicated that even in British ships such hatches were not usually guarded as prescribed therein, circular could not be given effect.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit by Charles F. Jones against the Gould Steamships & Industrials, Limited,

and another. From a decree dismissing the libel (300 F. 109), libelant appeals. Affirmed.

George Forbes, of Baltimore, Md. (Edwin W. Wells and Henry L. Wortche, both of Baltimore, Md., on the brief), for appellant.

Charles R. Hickox, of New York City (Stuart S. Janney, of Baltimore, Md., Earl Appleman, of New York City, and Edward L. Ward, of Baltimore, Md., on the brief), for appellees.

Before ROSE and PARKER, Circuit Judges, and WATKINS, District Judge.

ROSE, Circuit Judge. The facts, as the evidence taken in the District Court disclosed them, were clearly and sufficiently stated in the opinion in which Judge Soper gave his reasons for dismissing the libel. 300 F. 109. We agree that, upon the record before him, the libelant was not entitled to a decree. In this court the latter has offered additional testimony in the form of a circular issued by the Board of Trade of Great Britain in May, 1920, and still in force at the time he met with his injury. It or the copy submitted in evidence, bears on the front, the statement "For Official Use Only." It is headed "Instructions to Surveyors," and has the subheading "Coal Trimmers' Escape Holes." It begins with the explanation that it has been reported to the board that, in case of certain vessels loading coal cargoes, the means of exit from the holds are not sufficient to safeguard the lives of those engaged in trimming and stowing the cargo. It is said that the vessels most concerned are two-deck vessels, mostly foreign, not originally intended for the coal trade. The board then states that it regards it as essential that, in all vessels loading coal cargoes, sufficient means of exit should be provided to meet emergencies which may arise at the time of loading; but they should be so arranged and protected as to minimize the risk of water finding its way into the ship or of persons falling in them, either at sea or while loading in port. There then follows some five printed pages of detailed instructions as to when escape holes are required, how they are to be arranged, their size and location, and in what manner they are to be protected from the weather.

Reliance is placed especially on section 2, paragraph 6, which reads: "Gratings—When escape holes are found on a deck which is not a weather deck, and coamings with hinged covers are not fitted, each escape hole

is to be fitted with an efficient grating, in order to prevent persons falling through the opening. The gratings are to be hinged to the deck and capable of being easily opened from below." All that we have in this connection is the circular itself and the fact that, at the time the libelant was hurt, it had been in force for three years.

No evidence has been offered to show what significance, in cases like the one before us, the British law gives to the requirement of such a circular of instructions to the Board of Trade surveyors, or under what circumstances it was made applicable to vessels built before it was first promulgated. The testimony taken below, at least, indicates that even in British vessels trimmers' hatches were not usually guarded in the way prescribed in these instructions. We are not, therefore, called upon to consider whether, if the instructions were in Great Britain binding upon British owners, in the sense that the failure to comply with them was in itself conclusive or persuasive of negligence on their part, the American courts would be at liberty to give the same effect to them here. As the case stands, we would not be justified in reversing the decree below.

Affirmed.