STATE, FOR USE OF KATHERINE V. PEACH, *v.*
EDWARD F. CAVEY, ET AL.
[No. 87, October Term, 1937.]

*Decided January 13th, 1938.*

The cause was argued before BOND, C. J., URNER,
OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-
SON, JJ.

*George E. Rullman* and *Philander B. Briscoe,* with whom was *Jerome A. Loughran* on the brief, for the appellant.

*Joseph L. Donovan,* for the appellees.

JOHNSON, J., delivered the opinion of the Court.

Warner Peach died December 4th, 1935, from injuries sustained two days earlier when he fell through an open trap-door forming part of the porch floor of the store premises of Edward F. Cavey and Priscilla M. Cavey, his wife, at Woodstock, Maryland. His surviving widow, Katherine V. Peach, as equitable plaintiff, brought suit against the Caveys under the provisions of article 67, section 1 *et seq.* of the Code, as amended by Laws 1929, ch. 570, sec. 3, to recover damages sustained by her because of his death. Her declaration alleges that the defendants operated and controlled a store and building at Woodstock, where they sold various articles of merchandise and invited the general public in said vicinity, including decedent, to visit the store for trade and business, and that on the evening of the date in question, when daylight no longer existed, the decedent, while exercising due care as an invitee, attempted to enter said place of business, and in so doing walked upon the porch floor of the store at a place commonly used for its patrons, where he fell through an opening in the floor of said porch leading to the basement, and which opening the defendants negligently and carelessly suffered and permitted to remain uncovered without warning to him, and at a time when he had no reason to anticipate such an opening was not securely covered; that, as a result of said fall, her husband was thrown against the concrete steps leading to the basement of the premises and was seriously, painfully, and fatally injured, from which injuries his death resulted, all of which were due "solely and exclusively to the negligence and want of care on the part of the defendants" without negligence or want of care on the part of decedent, in consequence of which the equitable

plaintiff had been, by reason of said premature death and wrongful killing, deprived of large sums of money which the husband regularly gave her from his earnings. The case was subsequently removed to the Circuit Court for Anne Arundel County, where it came on for trial, and, at the conclusion of the plaintiff's case, the court granted prayers A, B, and D offered by the defendants. The A prayer was a demurrer to the evidence, the D prayer instructed the jury that under the pleadings in the case there was no evidence legally sufficient to enable the plaintiff to recover, as there was no evidence to show that the defendants knew the cellar door was opened at the time of the accident complained of, nor that they or either of them authorized or directed any one to leave the cellar door open, and their verdict must, therefore, be for the defendants. Their B prayer instructed the jury that, if they found defendants were guilty of negligence in allowing the cellar door to remain open, yet the plaintiff was not entitled to recover, if the jury further found that her decedent might, by the exercise of reasonable care and prudence have avoided the consequence of the defendants' negligence. It will thus be observed that there exists a conflict between prayers A and D which withdrew the case from the jury's consideration and the B prayer which submitted the case to them. However, since, notwithstanding this peculiar circumstance, it does appear that the jury found for the defendants under instructions A and D, we will consider the case in that light and ignore instruction B. The appeal is from the judgment entered upon the jury's verdict.

Counsel for appellant confined their argument to the exception relating to the rulings upon the prayers, hence the remaining exceptions will be treated as abandoned.

The testimony of the plaintiff and witnesses in her behalf was sufficient to enable the jury to find that appellees (defendants below) were the owners of property near Woodstock Station, Howard County, immediately east of a hard surface road leading from the station in

a southerly direction. Improvements upon the property consist of a two-story frame building used as a store with front porch extending practically its entire width, and attached to the store is the dwelling of defendants, but the front of this is to the south of the store front, leaving a paved opened space similar in appearance to the highway and extending from the south end of the store porch between the yard in front of the dwelling and the highway on the west. Next to the highway there are three gasoline pumps, and approximately four or five feet to their east are certain oil pumps, drums, and a grease gun attachment. Between these and the gasoline pumps is an open space, which is used not only by the Caveys in servicing customers, but as well by persons approaching their store from the south. It is the most direct way to enter the store from that direction, and customers in using it step upon the south end of the porch instead of going around and entering it from the front. The height of the step to enter the porch varies from six to fifteen inches, depending upon whether it is entered at its southeast corner or at the northeast corner, where it is attached to the store building. The entire width of the porch in front of the store property is fifteen feet, and its depth is approximately eight feet. At the northeast corner of the porch, and forming a part of its floor, is a two-section door leading into the basement under the store, and, when closed, the southernmost half of the trap-door is about one foot from the south side of the porch. The total width of the door is five and one-quarter feet, and its length is five feet and eleven inches, so that, when open, a pedestrian entering the porch from its south side would have a secure space of but slightly over two feet upon which to walk. This door is constructed of tongue and groove board similar in appearance to the other part of the porch floor, but at the easterly end near the store building it is slightly elevated. Entrance from the porch to the store is through a door located on the west side of the store, midway between its northwest and southeast corners.

On December 2nd, 1935, at 6:30 p. m., after dark, no lights were burning on the front porch or on the gasoline pumps, and the only light visible from the porch was through the store window above the trap-door to the basement. This was very faint, because of its distance from the porch as well as by reason of a filing cabinet and cash register in the store immediately in front of the window. The easterly half of the trap-door was open, and Warner Peach, who had shortly before left Mullinix Tavern, a short distance south of the Cavey store, approached the latter by using the entrance between the oil drums and gasoline pumps, entered the porch near its southwest corner, and stepped directly into the opening, fell down the steps leading to the cellar, and received injuries to his head, from which two days later he died in a Baltimore hospital without ever having regained consciousness. Decedent was fifty-three years old, and, although not a strong man physically, he lost no time from working at his trade of stone cutting, and his weekly wages were substantial. He lived at Granite, Maryland, and, while his visits to the Cavey store were not so frequent as those of many living nearby, he was not unfamiliar with the premises. At the time of his injuries, he was not intoxicated, although during the late afternoon of that day he had consumed three bottles of beer and purchased a pint of whisky, half of which at the time of his injuries was missing from the bottle. When it was learned that Peach had fallen into the cellar, Edward F. Cavey, one of the defendants, assisted in removing him therefrom, and made the statement that his boys had been down into the cellar, getting firewood for the store. Apart from the presumption which would naturally arise that these sons, who lived upon the premises and rendered services in connection with the conduct of the business of the parents, were acting as agents of the latter, this statement of the father is in no way in conflict with the idea that in getting the firewood for the store they did so at his express direction, but neglected to close the entrance leading into the cellar. Under either

theory the parents would be liable for such neglect on the part of the sons, and certainly the evidence offered by the plaintiff is otherwise sufficient to show negligence by the defendants in the maintenance of their premises, for there can be no doubt but that Peach was at the time of his injuries their business invitee, and, while they were not absolute insurers of his safety, the duty did rest upon them to maintain their premises in a reasonably safe condition for his visit. 3 *Cooley on Torts* (4th Ed.), sec. 440; *Beverly Beach Club v. Marron,* 172 Md. 471, 192 A. 278; *Chalmers v. Great A. & P. Tea Co.,* 172 Md. 552, 192 A. 419; *O'Neill & Co. v. Crummitt,* 172 Md. 53, 190 A. 763; *Am. Law Inst., Restatement Torts,* sec. 341.

The plaintiff's evidence is sufficient to show a breach of this duty on the part of the defendants, and there was, therefore, error in granting defendants' prayers A and D withdrawing the case from the consideration of the jury. The judgment appealed from must be reversed.

*Judgment reversed, with costs, and new trial awarded.*