THE S. S. ANDERSON.

No. 2435.

District Court, D. Maryland.

March 13, 1941.

Sol C. Berenholtz and Edward Azrael, both of Baltimore, Md., for libellants.

George Forbes, by Henry L. Wortche and Robert H. Williams, Jr., all of Baltimore, Md., for respondent.

COLEMAN, District Judge.

This is a suit by the Pennsylvania Threshermen's and Farmers Mutual Casualty Insurance Company to hold the owner of the steamship Anderson, a banana vessel of Norwegian registry, liable for injuries to a stevedore working on that vessel while employed by the Lanasa Fruit Steamship & Importing Company.

The stevedore was injured by falling through an open space in the planking of No. 2 hatch in the 'tween deck of that vessel, while she was being unloaded or being made ready for unloading in Baltimore Harbor. The Anderson was under a time-charter to the Lanasa Company which employed its own stevedores, among whom was Johnson, who was injured.

Independently of the present suit, this injured stevedore has a right to recover from his employer for his injuries, irrespective of any negligence on his part and irrespective of the vessel's duty, this separate right existing by virtue of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950. He has already proceeded under that statute and is now obtaining certain allowances by virtue of the insurance which his employer, the Lanasa Company, carries, pursuant to that statute, with the present libellant insurance company. It will thus be seen that the present suit is brought by the insurance company on behalf of its insured to the use of the injured stevedore, for the purpose of holding a third party, the vessel owner, liable. On the theory that the vessel owner is responsible, the insurance company claims reimbursement for the statutory allowances for which it is liable, by reason of its policy to the Lanasa Company under the Longshoremen's Act, and also compensatory damages for the injury to the stevedore, relying upon Section 33 of that Act, 33 U.S.C.A. § 933(i), which provides that where the employer is insured and the insurance carrier has assumed payment of a compensation award under the Act, the insurance carrier shall be subrogated to all the rights of the employer under the Act. The Act further provides (Section 12, Act June 25, 1938) that acceptance of a compensation award under it shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against a third person. 33 U.S.C.A. § 933 (b).

The weight of the credible evidence is not such as to warrant recovery in this case. There are certain applicable principles of admiralty law which are so well established that it is scarcely necessary to do more than state them. They may be briefly summarized as follows: The owner of a vessel, apart from what may be the obligation of a stevedore company to its employees working on the vessel, owes to such employees the duty of exercising reasonable diligence to furnish a reasonably safe place in which to perform their work; a reasonably safe passageway to and from their work, and appliances reasonably suited to the purposes for which they are to be used and such as are customary and usual for ships of the particular kind; and, further, it is the duty of the ship owner to give such stevedores notice of any latent danger or defects in the ship or her ap-

pliances. The Haraldshaug, 4 Cir., 20 F. 2d 337.

█ This rule has not been carried to the extent of saying that there is an absolute duty on the part of the ship owner to have any part of a hatch covered at or after the time the vessel is turned over to the stevedores. On the contrary, it is generally held that the owner of a vessel is not negligent in permitting the hatches to remain open, unless a custom of closing them has grown up, on the particular vessel or type of vessel, upon which custom the stevedore had a right to, and did rely; or unless the conditions under which they are left open amount to a hazard so latent as to impose a duty upon the vessel's owner to give warning of it, or protection against it. So, in order to impose liability in a case of this kind, we must find that the facts are within one of these exceptions.

█ What is the evidence in the present case to support such an exception? If the testimony of the injured stevedore himself is to be taken in whole cloth, a custom would appear to have existed with respect to this and similar vessels, which might have entitled him to believe that he could tread anywhere along the forepart of the movable planking in the hatch and find it at all times without any gaps, that is, without any plank missing, and therefore safe. But that testimony is denied by the testimony introduced by the ship's officers and by the representative of the stevedore company, the foreman, who employed the injured stevedore. It is true that the men in the same gang corroborated the injured stevedore's testimony, but the Court does not think this is sufficient to establish a custom such as is contended for, in the face of the other testimony in the case. Indeed, it is quite significant that there is a total absence of any testimony from other persons on this question of custom. If there were such a custom, in spite of the fact that the stevedore foreman said there is not and the officers of the vessel said there is not, why is there not some proof of it from more disinterested witnesses?

█ It is, of course, true that in a case of this kind the ship must supply adequate and safe planking. If this were a case of a board breaking, or slipping from its supports, or of a board not being long enough or being of a defective character, we would have a different situation. There is no ground upon which recovery can be had in this case unless there is clear proof of a custom not to leave any of the planks out, or unless, by leaving one or more of them out, the vessel presented a latent hazard with respect to which there was a duty to afford protection or at least a warning. Enough has been said as to custom. As to the latency of the unsafe condition, we do not feel, and we do not think that the authorities support the doctrine, that a stevedore, in unloading a vessel of this kind, under the given circumstances, may assume that he can go about, at will, in the dark in a hatch, without assuming the risk. If he is not supplied with proper lights, then the vessel owner might well be negligent, but in this case adequate extension electric lights were made available by the vessel. His own testimony is to the effect that he knew of their availability, but did not care to make use of them.

█ In conclusion, the weight of the credible evidence is a negation of any such custom as is contended for, and indicates that this unfortunate person did not avail himself of the proper known safeguards which the vessel had supplied; that the risk which he ran in this particular case was not an unusual one, or one against which the vessel was required to afford different or greater protection than it actually did afford, whatever may have been the obligation of this stevedore's employer.

The weight of the credible testimony as to the custom prevailing with respect to unloading the Anderson and other banana boats of the same type in Baltimore harbor is that such vessels are turned over to the stevedoring companies without any understanding, arrangement or custom that the hatches, or the planking used for flooring in them, shall be in any particular position at the time. Such being true, it would, indeed, be a harsh rule to say that not merely shall the stevedore companies be insurers against all accidents to their stevedores arising out of and in the course of their employment, but that the vessels shall also be such insurers, although they have nothing to do with the employment of the stevedores and no authority over them after employed. I find no support in the cases for such a rule. See Jones v. Gould Steamship & Industrials, Limited, D.C., 300 F. 109, a decision of this district, affirmed, 4 Cir., 10 F.2d 792.

An order will be signed in accordance with this opinion, dismissing the libel, costs to be paid by libellant.