## CHARLES I. ELZEY *v.* BOSTON METALS CO.
### [No. 66, October Term, 1947.]

*Decided January 16, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Jesse Slingluff, Jr.,* and *Michael P. Crocker* for the appellant.

*Wm. N. McFaul* and *H. Algire McFaul* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Charles Elzey sustained personal injuries by stepping into an open hatch aboard a ship belonging to the defendant on September 27, 1946. He brought suit in the Court of Common Pleas of Baltimore City. At the conclusion of the plaintiff's case the trial court granted a prayer taking the case from the jury. From a judgment for the defendant the plaintiff appeals.

The undisputed testimony shows that two or three days before the accident William Elzey, a brother of the plaintiff, went to the office of the defendant at Curtis Bay to inspect, with a view to purchasing, some laundry equipment located in a Liberty ship that was being dismantled by the defendant company. He was accompanied by a friend, Mr. Worth, who introduced him to Mr. Chait, an agent of the defendant. Chait gave Worth a flashlight, and told them to go aboard the ship, which was made fast to the dock, remarking "you know where it is, I don't need to go with you". Worth and William Elzey went up a ladder amidships to the main deck, walked aft into a superstructure containing the steering engine room which extended the width of the ship, thence down a companionway to the laundry room on the deck below. After inspecting the machinery, they returned to the office. Elzey told Chait he was interested in the "extractor", but would like to bring his older brother to look at it.

A little before noon on September 27, William Elzey returned with his brother, Charles Elzey, who was 71 years old and had retired from the laundry business. They spoke to Chait, who gave them a flashlight and permission to go aboard. William Elzey had a flashlight of his own and gave the defendant's flashlight to his brother. They went aboard the ship and entered the steering engine room, William Elzey leading the way. Charles Elzey did not follow directly in his footsteps, but went to the right and stepped into an open hatch located two or three feet from the forward bulkhead amidships. The hatch was three feet square, with a

six inch coaming around it. The plaintiff did not stumble, but stepped in with his right foot, straddling the hatch and painfully injuring his groin. The hatch had been opened and locked in the open position to admit two hose lines that were being used by acetylene workers on the deck below to cut the side plates of the hull. It was admitted that both flashlights were in working order and turned on at the time of the accident. The plaintiff testified that he did not see the hatch, although he admitted that he could have seen it "if I had thrown the flashlight right down on it"; he "threw it around the walls to see where the door might be, and see what might be in the room". The room was unlighted, except for the flashlights. In granting the prayer for a directed verdict, the trial court said: "I don't think it could be seriously contended that having a hatchway open was negligence in itself, because that's what hatches are for, that's their purpose, and with a ship in the condition in which this one was known to be, the very purpose of furnishing the flashlight was to enable Mr. Elzey and his brother to travel through dark places". The court also said: "it seems inescapable that the accident and injury were contributed to in some degree by the failure of the plaintiff, Mr. Elzey, to take proper precautions for his own safety to avoid an open and obvious danger."

It is well established that the owner of land or buildings owes a duty to business visitors to exercise ordinary care to render the premises reasonably safe and to give warning of latent or concealed perils. *Yaniger v. Calvert Building & Const. Co.*, 183 Md. 285, 37 A. 2d 263; 2 *Restatement of Torts*, sec. 343. "While the rule has been applied in innumerable situations, it has been invoked most frequently, perhaps, in the case of injuries from unguarded excavations, unprotected stairways, hatchways, trapdoors, turnstiles, revolving or swinging doors, and collapsing buildings". *Morgenstern v. Sheer*, 145 Md. 208, 218, 125 A. 790, 794. Compare *State v. Cavey*, 173 Md. 445, 196 A. 303. It is pointed out in Comment (e) of the *Restatement of Torts*, sec. 343, that

if one is "invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory."

The appellee contends that the rule applicable to stores and office buildings does not apply in the case of ships, where hatchways are necessarily kept open in port for loading, ventilation and other purposes, and "therefore are to be expected and avoided". *Dwyer v. National S. S. Co.*, C. C. N. Y., 4 F. 493, 495. In that case the accident was caused by the tilting of a grating that had been placed over a hatch in an unsafe manner by independent contractors. It is distinguishable on the facts. But there are cases in which shipowners have been held liable for failure to warn of open hatches, or to provide coamings, guardrails, lights or other notice of danger. *The Helios*, D. C., 12 F. 732; *The Guillermo*, D. C., 26 F. 921; *The Omsk*, 4 Cir., 266 F. 200; *The Wearpool*, D. C., 28 F. Supp, 886, affirmed 5 Cir., 112 F. 2d 245; *Luckenbach S. S. Co. v. Campbell*, 9 Cir. 8 F. 2d 223, compare *Tysko v. Royal Mail Steam Packet Co.*, 9 Cir., 81 F. 2d 960; *Riley v. Agwilnes, Inc.*, 56 N. Y. S. 2d 221; *Seyford v. Southern Pacific Co.*, 216 N. Y. 613, 111 N. E. 248. Compare *Jones v. Gould*, D. C. Md., 300 F. 109, affirmed 4 Cir., 10 F. 2d 792; *The Iowa*, 4 Cir., 213 F. 405. As Judge Offutt remarked in *Dickey v. Hochschild, Kohn & Co.*, 157 Md. 448, 450, 146 A. 282, 283: "as actionable negligence is a relative and not an absolute term, whether it exists in a given case must depend upon the facts and circumstances from which it is sought to be inferred".

In the case at bar there was no representation by the defendant, express or implied, that the ship was safe for travel. On the contrary, the plaintiff knew that the ship was being dismantled and was unlighted. Moreover, he was furnished an adequate means, in the shape of the flashlight, to see where he was going, and a guide who had made the trip before. The hatch coaming and the

hoses leading into it were in themselves some notice of the opening. There was no hidden trap. We think these facts distinguish the case from those cited. Even assuming that there was some evidence of negligence on the part of the defendant, we cannot escape the conclusion that the accident was caused by the failure of the plaintiff to use the means provided to see where he was going. Instead of following his brother, he stepped blindly over a hatch coaming in the dark without turning his light down. This was a decisive act of negligence on his part that clearly contributed to the accident. Compare *Yockel v. Gerstadt*, 154 Md. 188, 140 A. 40; *Texas Co. v. Washington, B. & A. Electric R. Co.*, 147 Md. 167, 127 A. 752, 40 A. L. R. 495; and *Le Vonas v. Acme Paper Board Co.*, 184 Md. 16, 40 A. 2d 43. And see *Restatement, Torts,* sec. 474 comment (b). We think the case was properly withdrawn from the jury.

*Judgment affirmed, with costs.*