**Robert MORALES et al., Appellants,**

v.

**CITY OF GALVESTON et al., Appellees.**

**No. 18011.**

United States Court of Appeals
Fifth Circuit.

Feb. 22, 1960.

Rehearing Denied April 8, 1960.

Milton Schwartz, Arthur J. Mandell, Houston, Tex., for appellants.

Preston Shirley, Galveston, Tex. (McLeod, Mills, Shirley & Alexander, Galveston, Tex.), for appellee, City of Galveston.

Edward W. Watson, Galveston, Tex. (Lockhart, Watson & Peterson, Galveston, Tex.), for appellee, Cardigan Shipping Co., Ltd.

Before RIVES, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for damages for personal injuries sustained by eight libellants, as a result of inhaling fumes from dangerous chemicals, while working as longshoremen trimming wheat on board the Steamship Grelmarion, a vessel operated by respondent, Cardigan Shipping Co., Ltd., discharged from grain elevators owned by the City of Galveston.

The claim as to the City of Galveston was: that it was negligent, in using dangerous chemicals harmful to human beings, in fumigating the wheat for the purpose of killing weevils; that it had had earlier experiences in connection with such loading where injuries had occurred; and that it had breached its duty of care to protect libellants from injury from such fumigated grain.

As to the Cardigan Shipping Co., the claim was that the vessel was not seaworthy in that when a quantity of grain containing the fumigant entered the hold, the place became dangerous and unsafe for libellants, and the ship owner then and thereupon breached its nondelegable duty to supply them, and keep them supplied, with a seaworthy place to work; that, in short, the vessel then became unseaworthy, and the ship became liable for the consequences as soon as the grain with the poisonous fumes entered the hatch. It was further contended that Cardigan was negligent in not making tests of the fumigated grain or otherwise discovering the presence of the chemicals therein.

Upon full and lengthy testimony as to what was provided to be, and was, done in and about the port at this time and other times and as to how the injuries occurred, the court made complete and detailed findings of fact and conclusions of law,[1] which absolved both the City and Cardigan of the charge of negligence, and Cardigan of the charge of its breach of duty to furnish a seaworthy vessel. In addition, though the findings and conclusions exonerated both respondents from liability, the court found the amount of damages sustained by each of the libellants as a result of inhaling the fumes created by the last batch of the wheat that came out of the funnels.

In his findings of fact, after fully exploring the evidence, the district judge found that no contaminated grain entered the hatch until the last spout poured it in, and that, under the full disclosures made in the record, neither negligence nor unseaworthiness was shown.

Appealing from the decree, libellants are here: attacking the findings and conclusions, that negligence was not established and unseaworthiness was not shown, as clearly erroneous; and insisting that Findings of Fact Nos. 9, 10, 11 and a portion of 19 are in effect findings of unseaworthiness as matter of law.

On the issue of negligence, the brief of the City of Galveston carefully searches out and draws together the evidence on which the court's finding of failure to prove negligence was based and draws the conclusion therefrom that the findings are not clearly erroneous and, under McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, cannot, therefore, be set aside. Cardigan's brief, as to the negligence charged against it, in effect does the same thing.

Upon the question of unseaworthiness, with which of course the City's brief does not deal, Cardigan's brief carefully canvasses the evidence and the cases and confidently insists that the appellants are

---

1. Morales v. City of Galveston, D. C., 181 F.Supp. 202.

entirely wrong in claiming: that the district judge's findings, on which his conclusions are based, are in effect findings of unseaworthiness; and that, if they are not, they are clearly erroneous and must be set aside.

■ Careful consideration of, and reflection on, the claims and arguments of the opposing parties, in the light of the record and the controlling authorities, leaves us in no doubt that, as to the charges of negligence, there is no basis whatever for the attack here upon the findings as clearly erroneous. Indeed, we are convinced that, under an impartial and disinterested view of the evidence as a whole, the findings are well supported and wholly reasonable. It seems clear to us, too, that, in pressing for reversal of the findings and conclusions, that no negligence was established, appellants are under the influence of the same error into which they fall when they put forward and argue their claims of unseaworthiness.

This is: that, because there was proof of prior incidents of injury from fumigants, and the court found that the libellants' injuries resulted from their presence, making the place of work temporarily dangerous, the court below was, and this court is, bound to find that defendants were liable as matter of law, that, in short, were insurers of libellants' safety against such injuries and, as such, bound to indemnify them from the damages resulting therefrom.

Of this contention, it is, we think, sufficient to say that it completely disregards: the nature of the duty of due care and of the duty to furnish a seaworthy vessel; the specific findings of the court as to the general and particular precautions taken against such occurrences and results; the precise and particular circumstances surrounding and attending them here; and the function and authority of the trial court to determine, in the first place, whether there was or was not negligence, and of this court to determine, in the second place, whether, within the established rule, a finding is clearly erroneous, that is, is such that the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.

We turn now to the claims of unseaworthiness, to say that, because of Mr. Tetreault's lawyer-like and truly admirable contribution [2] to the question of seaworthiness at issue here and the comprehensive and thoroughgoing treatment of it by Gilmore & Black, "The Law of Admiralty", Chapt. VI, it will not be necessary for us to attempt a survey of the many cases in this field or to trace the changes which, since Justice Brown's statement in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, of the four propositions, have been taking place in the law.

■ It will be sufficient for our purpose to state, and support the statement by cases so holding, that, while it has been correctly said that liability for unseaworthiness is a species of liability without fault, the bare statement of the rule in this form, without adding after fault, *in the sense of negligence*, is apt to, as it has here, sometimes mislead some of the proponents of this view into believing, or at least claiming in effect, that, because of the absolute and nondelegable duty of seaworthiness, the liability of a ship to indemnify a seaman for an injury caused by the unseaworthiness of the vessel is that of an insurer to make and keep the ship safe for the seamen under any and all circumstances.

We think it cannot be doubted that this is an incorrect view and that what and all that is meant by the statement is that if the ship was in fact unseaworthy, though the ship and its owner were free from negligence, they are not relieved from liability for injuries to the seamen resulting from such unseaworthiness. In Cox v. Esso Shipping Co., 5

---

2. "Seaman, Seaworthiness and the Rights of Harbor Workers", Francis L. Tetreault, Cornell Law Quarterly, Vol. 39, 381.

Cir., 247 F.2d 629, 637, this court thus correctly stated the law:

"* * * The owner has an absolute duty to furnish reasonably suitable appliances. If he does not, then no amount of due care or prudence excuses him, whether he knew, or could have known, of its deficiency at the outset or after use. In contrast, under the negligence concept, there is only a duty to use due care, i. e., reasonable prudence, to select and keep in order reasonably suitable appliances. Defects which would not have been known to a reasonably prudent person at the outset, or arose after use and which a reasonably prudent person ought not to have discovered would impose no liability."

While there are many cases dealing in the same general way with the subject, the best survey and summary of the present state of the law on this point, we think, is to be found in Ross v. Steamship Zeeland, 4 Cir., 240 F.2d 820, at page 822, and, because it is so concise, so accurate and so well supported by the authorities it cites, we set it out in full:

"We agree with the district judge that 'while the issue of unseaworthiness is not free from doubt, the evidence is sufficient to sustain libellant's position'. A vessel and her owner are liable to indemnify a seaman for an injury caused by the unseaworthiness of the vessel or a failure to supply and keep in order the proper appliances appurtenant to the ship. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. This obligation of the shipowner has been extended to benefit longshoremen and carpenters who are injured in the course of their employment while aboard the ship, even though they were employed by independent contractors. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. The owner's absolute duty to provide a seaworthy vessel, with appurtenant appliances and equipment, is not affected by relinquishment of control to another. Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirming Petterson v. Alaska S.S. Co., 9 Cir., 205 F.2d 478; Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120, reversing Rogers v. United States Lines, 3 Cir., 205 F.2d 57. Those cases hold that the owner is liable for defects in equipment brought aboard by a stevedore and used under the stevedore's sole control. The doctrine of seaworthiness has also been extended to include improper stowage of cargo, causing personal injuries. Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, 279; The State of Maryland, 4 Cir., 85 F.2d 944, 947, and cases cited. Cf. Berti v. Compagnie De Nav. Cyprien Fabre, 2 Cir., 213 F.2d 397.

"But the ship and her owners are not insurers of the safety of men working on board. Jones v. Gould Steamships & Industrials, Ltd., D.C.D.Md., 300 F. 109, affirmed 4 Cir., 10 F.2d 792. A vessel does not need to be free from all cause for mishap; it is enough if she is reasonably fit. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; Poignant v. United States, 2 Cir., 225 F.2d 595; Doucette v. Vincent, 1 Cir., 194 F.2d 834. The seaworthiness of a ship, her equipment and appurtenance is a relative concept, dependent in each instance upon the circumstances in which her fitness is drawn in question. The crucial consideration is whether the ship was, in all respects pertinent to the injury, reasonably fit to permit libellant to perform his task aboard the ship with reasonable safety. Lester v. United States, 2 Cir., 234 F.2d 625, 628. The doctrine of unseaworthiness does not

extend so far as to require the owner to keep appliances which are inherently sound and seaworthy absolutely free at all times from transitory unsafe conditions resulting from their use. Cookingham v. United States, 3 Cir., 184 F.2d 213; Hanrahan v. Pacific Transport Co., 2 Cir., 262 F. 951, certiorari denied 252 U.S. 579, 40 S.Ct. 345, 64 L.Ed. 726; Adamowski v. Gulf Oil Corp., D.C.E.D.Pa., 93 F.Supp. 115, affirmed 3 Cir., 197 F.2d 523; Shannon v. Union Barge Line Corp., 3 Cir., 194 F.2d 584, certiorari denied 344 U.S. 846, 73 S.Ct. 62, 97 L.Ed. 658; Daniels v. Pacific-Atlantic S.S. Co., D.C.E.D.N.Y., 120 F.Supp. 96; Garrison v. United States, D.C.N.D. Cal., 121 F.Supp. 617; McMahan v. The Panamolga, D.C.D.Md., 127 F. Supp. 659."

■ Appellants in their brief, calling our attention to the recent case of Mitchell v. Trawler Racer, Inc., 1 Cir., 265 F.2d 426, and to the grant of the writ of certiorari in it, urge upon us that the case was not well decided and that the cases cited by them in their brief are to the contrary. Whether appellants are correct in this view is not, we think, material to the decision of this case, or at all inconsistent with the views we have announced that, under the facts of this case which must be kept precisely in mind, the district judge's findings, that unseaworthiness was not present here, may not be set aside as clearly erroneous. As the district judge carefully pointed out in Findings 9, 10, 11 and 19, which appellants urge upon us are in effect in contradiction of the finding and conclusion that the ship was not unseaworthy, this is not a case of something transitory occurring to prevent the ship from being reasonably fit to permit a libellant to perform his task aboard the ship with reasonable safety and, persisting without being discovered, causing injury such as is dealt with in the Mitchell case, supra, and the other cases cited by appellants. This is a case of a happening "when the last batch of wheat came out of the funnels", instantaneously rendering unfit quarters which until then had been, and, when the funnels cleared away, continued to be, entirely seaworthy.

If it had been claimed here, as it could not be, that the damage resulted from the flood of grain closing the hatch and shutting off the air, or from anything else than the untoward and unexpected fact that the last amount of grain loaded was charged with the fumigant, the question would be different. As the facts were found and are, to hold as a matter of law that the ship was unseaworthy in not being in reasonably fit condition to permit the handling of the wheat, would be to impose upon the ship not the duty and obligation of seaworthiness, absolute and undelegable as it was, but the duty of an insurer. This court, early held in Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490, at page 494, that there was a duty of ship owners to their seamen to see that the ship is seaworthy and her equipment in safe condition for use when she starts on her voyage and that such duty "as to injuries, for which the general maritime law provides recovery, is absolute". This view, expressly approved in the Second Circuit in The H. A. Scandrett, 87 F.2d 708, 711, has been uniformly approved and followed here. Nothing in the findings and conclusions of the district court, nothing in the views stated here, was intended to be or is to the contrary. As precisely pointed out, in Mahnich v. Southern Steamship Co., 321 U.S. 96, at page 98, 64 S.Ct. 455, 457, 88 L.Ed. 561, "A finding of unseaworthiness is usually a finding of fact". The district judge, on evidence, in our opinion, amply supporting his finding, has found and held that the duty to furnish a seaworthy ship, that is one reasonably fit, absolute and non-delegable as that duty is, was not breached, and we should be, and are, bound and controlled by his findings.

The judgment was right. It is affirmed.