472 A.2d 55

**HEALTH SERVICES COST REVIEW COMMISSION et al.**

v.

**LUTHERAN HOSPITAL OF MARYLAND, INC.**

No. 160, Sept. Term, 1982.

Court of Appeals of Maryland.

March 9, 1984.

Paul F. Strain, Deputy Atty. Gen. (Stephen H. Sachs, Atty. Gen., Jay E. Levy and Stanley Lustman, Asst. Attys. Gen., on the brief), Baltimore, for appellants/cross-appellees.

Amicus Curiae brief of Blue Cross of Maryland, Inc. filed. John A. Picciotto, Towson, on the brief.

Richard G. McAlee (Donald N. Rothman and Gordon, Feinblatt, Rothman, Hoffberger & Hollander on the brief), Baltimore, for appellee/cross-appellant.

Amicus Curiae brief of Health Insurance Association of America filed. Charles O. Fisher, Westminster, on the brief.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

The Maryland Health Services Cost Review Commission (Commission), the petitioner and cross-respondent, was created for the purpose of "assuring the reasonableness of rates set by hospitals." In order to accomplish this purpose, the Commission is authorized to review and approve or disapprove the reasonableness of any rate established or proposed by hospitals. *Health Services Cost Review Commission v. Franklin Square Hospital,* 280 Md. 233, 234–35, 372 A.2d 1051, 1052 (1977). The rate review and approval procedures to be utilized by the Commission are delineated in Maryland Code (1982) § 19–219 of the Health-General Article. That section provides in pertinent part:

"(a) Filing of notice; effective date.—(1) *A facility may not change any rate* schedule or charge of any type or class defined under § 19–217(b) of this subtitle, *unless the facility files with the Commission a written notice of the proposed change* that is supported by any information that the facility considers appropriate.

(2) *Unless the Commission orders otherwise* in conformity to this section, *a change in the rate schedule or charge is effective on the date that the notice specifies.* That effective date shall be at least 30 days after the date on which the notice is filed.

"(b) Public hearing authorized.—(1) *Commission review of a proposed change may not exceed 150 days after the notice is filed.*

(2) The Commission may hold a public hearing to consider the notice.

(3) If the Commission decides to hold a public hearing, the Commission:

(i) Within 65 days after the filing of the notice, shall set a place and date for the hearing; and

(ii) May suspend the effective date of any proposed change until 30 days after conclusion of the hearing.

.        .        .        .        .

"(e) Refund of funds collected pending delay or appeal. —If a change in any rate or charge increase becomes effective because a final determination is delayed because of an appeal or otherwise, the Commission may order the facility:

(1) To keep a detailed and accurate account of:

(i) Funds received because of the change; and

(ii) The persons from whom these funds were collected; and

(2) As to any funds received because of a change that later is held excessive or unreasonable:

(i) To refund the funds with interest; or

(ii) If a refund of the funds is impracticable, to charge over and amortize the funds through a temporary decrease in charges or rates.

"(f) Commission decision in contested case.—A decision by the Commission on any contested change under this section shall comply with the Administrative Procedure

Act and shall be only prospective in effect." [1]  (Emphasis added.)

---

1. Ch. 21 of the Acts of 1982, § 2, effective 1 July 1982, amended Md.Code (1957, 1980 Repl.Vol.), Art. 43, § 568W without any substantive change relevant here.  That section provided in pertinent part:

"(a) ... [A] *hospital* subject to the provisions of this subtitle *may not change or amend that schedule of rates* and charges of the type and class which cannot be changed without prior approval of the Commission, except in accordance with the following procedure:

"(1) *Any request for a change in rate schedules or other charges must be filed in writing* with such supporting data as the hospital seeking the change deems appropriate.  Unless the Commission orders otherwise as provided for hereunder, a hospital may not establish such changes except after 30 days prior written notice to the Commission.  Upon receipt of notice, the Commission, if it deems necessary, may hold a public hearing on the proposed change.  In this event, a hearing date and place shall be set no later than 65 days after receipt of the notice and the Commission may suspend the effective date of any proposed change until 30 days after conclusion of the hearing.  However, *the review of the proposed change may not exceed an overall period of 150 days from the date of filing.*  In any such case a formal written statement of the reasons for the suspension will be promptly submitted to the hospital.  *Unless suspended, any proposed change shall go into effect upon the date specified in the application.*

. . . . .

"[(2)] ... (iii) When any change affecting an increase in rates goes into effect before a final order is entered in the proceedings due to an appeal or other delay, where it deems it necessary and practicable, the Commission may order the hospital to keep a detailed and accurate account of all amounts received by reason of the increase in rates and the persons from whom such amounts were received.  At the conclusion of any appeal or other proceeding the Commission may order the hospital to refund with interest to each such person any part of the increase in rates that may subsequently be held to be excessive or unreasonable.

"In the event a refund is not practicable, the hospital shall, under appropriate terms and conditions determined by the Commission, charge over and amortize by means of a temporary decrease in rates whatever income it realized from that portion of the increase in rates which was subsequently held to be excessive or unreasonable.

. . . . .

"(5) Every decision and order of the Commission in any contested proceeding shall be in writing and shall state the grounds for the Commission's conclusions.  The effects of such orders shall be prospective in nature."  (Emphasis added.)

On 3 December 1980, the respondent and cross-petitioner, Lutheran Hospital of Maryland, Inc. (hospital), a nonprofit community hospital, filed a rate application with the Commission pursuant to Maryland Code (1957, 1980 Repl.Vol.), Art. 43, § 568W(a), now Maryland Code (1982) § 19–219(a) and (b) of the Health-General Article. The hospital proposed that its then approved rates, established in 1978, be increased effective 2 January 1981. The Commission suspended the effective date of the proposed rates until 6 February 1981. Subsequently, the hospital agreed to extensions until 1 September 1981.

On 1 October 1981, after hearings held in April and May 1981, the Commission issued its "Final Decision" and "Order." In its Final Decision, the Commission described the methodology it had used in determining an appropriate rate structure. In its Order, the Commission established approved permanent rates, effective 1 October 1981. Those rates were unsatisfactory to the hospital.

On 2 October 1981, the hospital filed an appeal in the Baltimore City Court, now the Circuit Court for Baltimore City. In its "Petition," the hospital raised a multiplicity of questions as to whether the Commission's determinations were arbitrary and capricious, and whether the Commission had exceeded its authority. Of particular significance were the questions whether the hospital's proposed rates became effective on 1 September 1981, and whether the Commission lacked authority to issue its 1 October 1981 Order after the expiration of the statutorily prescribed time period for Commission review. Thus, in its Petition, the hospital said:

"7. The Commission's enabling legislation establishes certain deadlines within which it must take final action in a contested case. The Commission failed to meet these

---

The trial court entered its order on 2 July 1982, one day after the effective date of § 19–219 of the Health-General Article. The trial court, however, applied Md.Code (1957, 1980 Repl.Vol.), Art. 43, § 568W.

deadlines in this case, and therefore the Order is illegal and void."

In its "Memorandum," the hospital contended that its rates became effective on 1 September 1981 because the "Commission failed to act on the Hospital's application within the statutory time limit." In support of its position, the hospital pointed out that Art. 43, § 568W(a)(1), now § 19–219 of the Health-General Article, mandates Commission action within 150 days. More particularly, the hospital said:

"Thus, 150 days is the longest period of time that the Commission can suspend a hospital's proposed rates. Thereafter, if the Commission fails to issue its final order, and no extension of time has been granted to the Commission by the hospital seeking rate relief, the proposed rates go into effect. At this juncture, the Commission is without legal authority to preclude the implementation of the proposed rates." (Footnote omitted.)

The hospital further stated that its application had been filed on 3 December 1980; that it had agreed to extensions until 1 September 1981; and that "[w]hen the September 1, 1981 date passed, and the Commission had not rendered its final decision, the Hospital had the legal right to implement its rates."

In its "Answer" to the hospital's "Petition," the Commission denied that its determinations were arbitrary and capricious, and that it had exceeded its authority. More particularly, with respect to the questions whether the hospital's proposed rates became effective on 1 September 1981, and whether the Commission lacked authority to issue its 1 October 1981 Order after the expiration of the statutorily prescribed time period, the Commission said:

"7. The Commission denies the allegations as set forth in paragraph 7 of the Hospital's Petition and states that ... the Commission [met] the legal deadlines in this case...."

In its "Memorandum" the Commission contended that the statutorily prescribed time period for Commission review

was not mandatory and that consequently it had the authority to issue its 1 October 1981 Order after the expiration of that time period. In support of its position, the Commission said:

"[T]he Commission is puzzled by the Hospital's position before this Court that its requested rates should go into effect 'by operation of law'. . . . The Hospital has previously taken the position, on more than one occasion, that when rates go into effect by operation of law, for example, before a final order is entered by the Commission, those rates stay in effect only until the issuance of the final order, pursuant to Article 43, § 568W(a)(iii) [now § 19–219(e) of the Health-General Article]. In other words, *a final rate order supersedes rates otherwise obtained, such as by operation of law, and the Commission has, of course, issued a final rate order in this case.*" (Emphasis added.)

Thus, the Commission litigated on the merits the questions whether the hospital's proposed rates became effective on 1 September 1981, and whether the Commission lacked authority to issue its 1 October 1981 Order after the expiration of the statutorily prescribed time period.

On 2 July 1982, the trial court issued a memorandum opinion. It found that some of the Commission's determinations were arbitrary and capricious because the "market basket"[2] analysis utilized by the Commission was improperly applied to the facts of this case.[3] Having concluded "that

---

2. A "market basket" consists of a group of hospitals considered by the Commission to be comparable to the hospital whose rates are being reviewed. The costs of that hospital are compared to the average costs of the market basket.

3. The trial court specifically found the following applications of the market basket analysis to be arbitrary and capricious:
   1) The Commission utilized a market basket different from that employed in establishing the rates for a comparable hospital, North Charles General Hospital (North Charles).
   2) The Commission utilized a market basket analysis of costs for housekeeping, administration, and plant operations that failed to

the Commission applied its market basket analysis to [the hospital] in an arbitrary and capricious manner," the trial court. found it unnecessary "to determine the legality *vel non* of setting rates on the basis of a market basket."

Additionally, the trial court found for a variety of other reasons that the Commission's determinations were arbitrary and capricious.[4] Moreover, the trial court found that the Commission had exceeded its authority in many respects.[5]

take into account the unique characteristics of the hospital including its overall size and square footage.

3) The Commission utilized a market basket analysis for house staff physicians' costs that failed to take into account the unique characteristics of the hospital, including its ineligibility for and lack of a program utilizing the services of resident physicians whose salaries are substantially less than the salaries of house staff physicians.

4) The Commission utilized a market basket analysis of nurse staffing costs that failed to take into account the possible under-staffing of the market basket hospitals because of the severe shortage of nurses in Maryland, and the unique characteristics of the hospital, including the degree of illness of the patients treated and the quality of care.

4. More particularly, the trial court found the Commission's determinations to be arbitrary and capricious in the following respects:

1) The application of the Commission's rates would render the hospital insolvent.

2) The Commission rejected the rates requested by the hospital, although they were similar to rates approved by the Commission for North Charles.

3) The Commission disallowed physician costs in certain departments in which there were some fee for service billings because it was unable to devise a methodology by which to determine the reasonableness of such costs.

4) The Commission rejected the hospital's proposed clinic rates and imposed the "rate that Medicaid pays for the same service provided in a physician's office," a rate that disregarded the hospital's actual costs, and was not imposed on any other hospital, including North Charles.

5) The Commission refused a retroactive inflation adjustment because the hospital had previously earned a profit.

6) In determining that the hospital's costs for ancillary and emergency room physicians who do not bill fee for service was the "median physicians' cost per unit of service for all hospitals in the

5. See note 5 on page 659.

State in which the physicians do not bill fee for service," the Commission failed to take into account the unique characteristics of the hospital, including its actual costs.

7) The Commission disallowed a rate adjustment to the hospital's bad debt and charity care allowance because it erroneously concluded that it lacked authority to make a reasonable adjustment to compensate for the costs of rendering care to Medicaid patients whose benefits had expired.

8) The "minimum occupancy level" assigned by the Commission was too high because it failed to take into account the unique characteristics of the hospital, including the hospital's lower projected occupancy level based on its size and its mix of emergency and scheduled patients, and because it was higher than the median or average occupancy level of other area hospitals, and more particularly, higher than the occupancy level at North Charles, a hospital for which no minimum occupancy level was assigned.

According to the Commission, a minimum occupancy level affects a hospital's rates for fixed costs. A hospital's failure to meet its minimum occupancy level results in a reduction in reimbursement for fixed costs.

5. More particularly, the trial court found that the Commission had exceeded its authority in the following respects:

1) by establishing rates that would render the hospital insolvent;

2) by utilizing a market basket analysis of nurse staffing costs because it lacked the authority to regulate the quality of services provided by a hospital;

3) by assigning a minimum occupancy level because it lacked authority to regulate hospital capacity or the volume of services provided by a hospital;

4) by restricting the total cost of drugs and supplies per patient because it lacked authority to regulate the quality or quantity of services provided by a hospital;

5) by establishing the hospital's clinic rates at "market value"—the "rate that Medicaid pays for the same service provided in a physician's office"—because it lacked authority to set rates that were not reasonably related to the costs of a hospital;

6) by imposing a guaranteed inpatient revenue system (GIR) because it lacked authority to regulate the quality or quantity of services provided by a hospital.

According to the Commission, a guaranteed inpatient revenue system (GIR) is a "diagnostic-based rate-setting approach" "that is designed to provide incentives to reduce unnecessary or marginal ancillary testing, to reduce length of stay and to promote pre-admission testing," and is "Maryland's most promising inflation control methodology" as well as "the linchpin of the current efforts by the Commission to control hospital costs in Maryland."

Before the Commission attempted to impose a GIR, rates for services such as laboratory tests were based upon the price per unit of service. A GIR, however, establishes an approved rate for the total costs incurred for the treatment of a given patient's diagnosis

Finally, the trial court concluded that the hospital's proposed rates became effective on 1 September 1981 and that the Commission had no authority to issue its 1 October 1981 Order changing those rates because the statutorily prescribed time period for Commission review had expired. More particularly, the trial court said, in pertinent part:

"Article 43, Section 568W(a)(1) provides:

'[T]he Commission may suspend the effective date of any proposed change until 30 days after conclusion of the hearing. However, the review of the proposed change may not exceed an overall period of 150 days from the date of filing.... Unless suspended, any proposed change shall go into effect upon the date specified in the application.' [Emphasis omitted.]

*Therefore, although the Commission has authority to suspend the effective date of any proposed change in rates, its authority to do so is expressly limited: it must act on the proposed change within 150 days or the proposed rates become effective.*

"[The hospital] filed its permanent rate application with the Commission on December 3, 1980; it requested a change in rates to take effect on January 2, 1981. The Commission suspended the effective date of the proposed rates until February 1, 1981. Thereafter, the Hospital agreed to extend the suspension period to June 1, 1981. It then offered to extend the time limit on final action to September 1, 1981, if the Commission would grant an interim rate increase of ten percent. This offer was accepted. The Commission did not request any further extensions, and the Court finds that the Hospital did not

---

regardless of the units of service rendered. If more units of service are provided to a given patient than are covered by the approved rate, the amount of the excess is offset against cases involving similar diagnoses in which fewer services are provided than are covered by the approved rate. At the end of the fiscal year, a hospital will be denied reimbursement for the aggregate amount of charges in excess of the GIR rate for a particular diagnosis.

agree to waive the deadline or extend it beyond September 1, 1981.

"*The Commission failed to issue a final order within the period required by Section 568W(a)(1), as extended to September 1, 1981, by agreement of the parties. Once the September 1, 1981, deadline passed without final action by the Commission, the Hospital's proposed rates went into effect and the Hospital had the right to implement those rates. Accordingly, the Hospital's requested rates shall be permitted to take effect.*"

(Emphasis added.)

Thus, the trial court determined in essence that the statutorily prescribed time period for Commission review was mandatory; that the Commission failed to issue an order within that time period; that on 1 September 1981, it was divested of authority to change those proposed rates in this proceeding; that on 1 September 1981, the hospital's proposed rates became effective; and that in this proceeding the Commission had no authority to issue its 1 October 1981 Order changing those rates. On 2 July 1982, the trial court entered an order that stated in pertinent part:

"[T]he Order of the Health Services Cost Review Commission of October 1, 1981, be and it is hereby REVERSED and MODIFIED and the case REMANDED to the Health Services Cost Review Commission with directions to calculate new approved rates for Lutheran Hospital of Maryland, Inc., in accordance with the foregoing Opinion, to consist of:

(1) the rates requested by the Hospital in its permanent rate application filed December 3, 1980. . . . "

The Commission filed an appeal to the Court of Special Appeals. Although in its brief the Commission raised a multiplicity of questions primarily related to whether the trial court erred in concluding that its determinations were arbitrary and capricious, and that it had exceeded its authority by utilizing certain methodologies in determining the appropriate rates to be charged by the hospital, the Commis-

sion did not raise the questions whether the trial court had erred in determining that the hospital's proposed rates became effective on 1 September 1981, and that the Commission had no authority to issue its 1 October 1981 Order changing those rates.[6]

Before consideration by the Court of Special Appeals, the Commission filed a petition for a writ of certiorari. Although in its petition, the Commission again raised a multiplicity of questions primarily related to whether it had acted arbitrarily and capriciously or it had exceeded its authority in determining the appropriate rates to be charged by the hospital, the Commission did not raise the questions whether the trial court had erred in determining that the hospital's proposed rates became effective on 1 September 1981 and that the Commission had no authority to issue its 1 October 1981 Order changing those rates. We granted the petition.[7]

In its brief filed in this Court, the Commission once again raised a multiplicity of questions.[8] These questions primari-

---

6. The hospital filed a cross appeal in which it raised the question whether the trial court had erred in concluding that the Commission had not deliberately attempted to render the hospital insolvent by establishing unjustifiably low rates.

7. The hospital filed a cross-petition in which it again raised the question whether the trial court erred in concluding that the Commission had not deliberately attempted to render the hospital insolvent by establishing unjustifiably low rates. We granted the cross-petition.

8. The questions presented by the Commission were stated in the unartful manner characteristic of its brief as follows:
    "I.  Whether the lower court erred in concluding that the rates set by the Commission would render Lutheran insolvent.
    II.  Whether in prohibiting the Commission from taking any action that could affect quality or quantity of hospital care, the lower court imposed an unworkable constraint upon the Commission's rate-making.
    III.  Whether the lower court improperly forbade the application of normal rate-making methodologies to Lutheran.
    IV.  Whether the lower court exceeded its authority and distorted the administrative process when it granted a future rate increase

ly related to whether the Commission had acted arbitrarily and capriciously or had exceeded its authority in determining the appropriate rates to be charged by the hospital.[9] Although the Commission raised the question whether it had authority to utilize a market basket analysis, it did not raise the question whether it had acted arbitrarily and capriciously by utilizing an inappropriate market basket when applying its market basket analysis.[10] Most important, in its brief, the Commission did not raise the questions whether the trial court had erred in determining that the hospital's proposed rates became effective on 1 September 1981 and that the Commission had no authority to issue its 1 October 1981 Order changing those rates.

The hospital, in its brief, contends that as a result of the Commission's failure to raise those questions, they have been waived. In its reply brief, the Commission does not contend that those questions were raised and properly preserved for review. Rather, it addresses the merits of those questions.

---

for past experience, and when it ordered that the Commission fully adopt the hospital's rate application."

**9.** More particularly, the Commission raised the question whether the trial court erred in the following respects:

1) In determining that the Commission acted arbitrarily and capriciously and exceeded its authority by establishing rates that would render the hospital insolvent.

2) In determining that the Commission lacked authority to utilize effective rate-setting methodologies such as a GIR, a market basket analysis, a median cost standard, and a minimum occupancy standard.

3) In determining that the Commission had acted arbitrarily and capriciously in refusing a retroactive inflation adjustment.

Additionally, the Commission raised the question whether the trial court had erred in usurping an administrative function by ordering the Commission to approve the rates requested by the hospital, rather than remanding the case to the Commission for further consideration and modification of its 1 October 1981 order.

**10.** Indeed, in its petition for a writ of certiorari and at oral argument, the Commission conceded that it had utilized an inappropriate market basket when applying its market basket analysis to costs for housekeeping, administration, plant operations, house staff physicians' services, and nurses' services.

This Court has consistently held that a question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review. *Logan v. Town of Somerset,* 271 Md. 42, 67, 314 A.2d 436, 449–50 (1974); *Harmon v. State Roads Commission,* 242 Md. 24, 30–32, 217 A.2d 513, 516–17 (1966); *State ex rel. Peach v. Cavey,* 173 Md. 445, 447, 196 A. 303, 304 (1938); Md. Rule 831 c 2 & 4; *see Carter v. State,* 286 Md. 649, 651, 408 A.2d 1335, 1337 (1979). Here the controversy between the parties concerned the appropriate rates to be charged by the hospital. The record shows that on 3 December 1980 the hospital filed a rate application seeking an increase in rates effective 2 January 1981. The Commission suspended the effective date of the proposed rates until 6 February 1981. Subsequently, the hospital agreed to extensions until 1 September 1981. The Commission did not issue an order on that date. On 2 July 1982, the trial court concluded, among other things, that the hospital's proposed rates became effective on 1 September 1981 and that the Commission had no authority to issue its 1 October 1981 Order changing those rates.

The questions whether the trial court erred in reaching those conclusions were not raised or argued in the Commission's brief in the Court of Special Appeals, in its petition for a writ of certiorari or, most important, in its brief in this Court. Rather, the Commission raised questions primarily related to whether it had acted arbitrarily and capriciously or had exceeded its authority in determining the appropriate rates to be charged by the hospital. Accordingly, the questions whether the trial court erred in concluding that the hospital's proposed rates became effective on 1 September 1981, and that after the expiration of the statutorily prescribed time period the Commission had no authority to issue its 1 October 1981 Order changing those rates, have been waived and are therefore not properly before us. As a consequence, those questions have been determined for purposes of this case. In short, it has been determined that in this proceeding the Commission has no authority to change

the hospital's present rates.[11]   Because all of the questions raised by the Commission relate to the appropriateness of the rates to be charged by the hospital, they are not viable. Under these circumstances, we shall affirm the judgment of the trial court.

JUDGMENT OF THE BALTIMORE CITY COURT, NOW THE CIRCUIT COURT FOR BALTIMORE CITY, AFFIRMED.  COSTS TO BE PAID BY PETITIONERS.

---

11.   We note, however, that the Commission has the power at any time to initiate proceedings to review the reasonableness of any rate. Md.Code (1957, 1980 Repl.Vol.), Art. 43, § 568U(a), now Md.Code (1982) § 19–216(a) of the Health-General Article.   *See Holy Cross Hospital of Silver Spring, Inc. v. Health Services Cost Review Commission,* 283 Md. 677, 688, 393 A.2d 181, 186 (1978).   Consequently, the Commission has the power at any time to initiate proceedings to review the reasonableness of the hospital's present rates.