MORALES ET AL. *v.* CITY OF GALVESTON ET AL.

No. 480.  Argued April 23–24, 1962.—Decided June 11, 1962.

*Arthur J. Mandell* argued the cause and filed a brief for petitioners.

*Preston Shirley* argued the cause and filed briefs for the City of Galveston.  *Edward W. Watson* argued the cause for the Cardigan Shipping Co., Ltd., respondent.  On the briefs with *Mr. Watson* was *Clarence S. Eastham*.

166

MR. JUSTICE STEWART delivered the opinion of the Court.

On the afternoon of March 14, 1957, the S. S. *Grelmarion* was berthed at Galveston, Texas, taking on a cargo of wheat from a pierside grain elevator owned and operated by the city. The wheat was being loaded directly from the elevator into the ship by means of a spout. The petitioners were longshoremen engaged in "trimming" the wheat as it was received in the offshore bin of the vessel's No. 2 hold, which was then about three-quarters full. A last "shot" of grain was. called for and was released into the bin. The grain in this last shot had been treated with a chemical insecticide, and the petitioners were injured by fumes from the chemical, made noxious by concentration in the closely confined area where they were working.

The petitioners brought the present suit against the City of Galveston and the owner of the vessel to recover for their injuries.[1] Their claim was predicated upon the negligence of the City and the shipowner, and upon the unseaworthiness of the ship. After an extended trial, the District Court entered judgment for the respondents, based upon detailed findings of fact, 181 F. Supp. 202, and the Court of Appeals affirmed, 275 F. 2d 191. On certiorari (364 U. S. 295) we vacated the judgment and remanded the case to the Court of Appeals for consideration in the light of *Mitchell* v. *Trawler Racer, Inc.,* 362 U. S. 539, which had been decided in the interim. That court, one judge dissenting, was of the view that *Mitchell* was inapplicable to the facts of the present case, and again affirmed the District Court's judgment, 291 F. 2d

---

[1] Petitioners of course received compensation and medical treatment under the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 901 *et seq.* 181 F. Supp., at 207.

97. We granted certiorari to consider a seemingly significant question of admiralty law. 368 U. S. 816.

The factual issues bearing upon the alleged negligence of the City and shipowner were determined in their favor by the District Court. Specifically, the court found that the City had *not* itself applied the fumigant to the grain in question, and that neither of the respondents knew, or in the exercise of reasonable care should have known, that the grain had been improperly fumigated at an inland point by someone else.[2] Even a cursory examination of

---

[2] "14. I find that neither of the respondents knew, or in the exercise of reasonable care should have known, that this quantity of grain, which had been improperly treated with an excessive amount of fumigant, was in the elevator or loaded aboard the Grelmarion; and that (for all the evidence shows here) the respondent city, in the operation of its elevator, had never received knowledge of a prior instance where chloropicrin or other fumigants applied at inland elevators had adhered to the grain sufficiently long as to present danger after receipt by the elevator.

"15. I find that the respondent city was not negligent in failing to know or learn of the presence of this quantity of grain within its elevator, in failing to make some additional inspection therefor, or in any other particular. The record shows without dispute that careful and painstaking inspections and examinations were made under governmental authority when the grain was received, and again as it was disbursed by the elevator, which in the present instance failed to detect the presence of the remaining traces of fumigant in this quantity of grain. I find that had additional inspections been made by the respondent city, there is no reason to believe that such inspections would have been more successful.

.          .          .          .          .

"17. I find that the Grelmarion's cargo spaces were of customary design and construction; that they were clean, and in all respects ready to receive the wheat; and had been surveyed and approved prior to loading. No fumigation for weevils was made aboard the vessel, and none was necessary. . . . I find . . . that her Captain, crew, agent, or other representatives were not negligent in any particular." 181 F. Supp. 202, at 205–207.

the lengthy record shows that these findings were based upon substantial evidence. They were re-examined and affirmed on appeal.[3] We cannot say that they were clearly erroneous. *McAllister* v. *United States,* 348 U. S. 19, 20–21.

Of greater significance in this litigation is the issue which prompted our remand to the Court of Appeals for reconsideration. Briefly stated, the question is whether, upon the facts as found by the District Court, it was error to hold that the *Grelmarion* was seaworthy at the time the petitioners were injured.[4]

In the *Mitchell* case, *supra,* we reversed a judgment for the defendant, because the District Court and the Court of Appeals had mistakenly imported concepts of common-law negligence into an action for unseaworthiness. There the jury had erroneously been instructed that liability for unseaworthiness could attach only if the alleged unseaworthy condition was "there for a reasonably long period of time so that a shipowner ought to have seen that it was removed."[5] The Court of Appeals had affirmed on the theory that, at least as to an unseaworthy condition that arises during the progress of the voyage, the shipowner's obligation "is merely to see that

---

[3] "Careful consideration of, and reflection on, the claims and arguments of the opposing parties, in the light of the record and the controlling authorities, leaves us in no doubt that, as to the charges of negligence, there is no basis whatever for the attack here upon the findings as cleary erroneous. Indeed, we are convinced that, under an impartial and disinterested view of the evidence as a whole, the findings are well supported and wholly reasonable." 275 F. 2d, at 193.

[4] The District Court and the Court of Appeals, without discussion, proceeded upon the assumption that the petitioners belonged to the class to whom the respondent shipowner owed the duty of providing a seaworthy vessel. This was correct. *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85; *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406.

[5] 362 U. S., at 540–541, n. 2.

reasonable care is used under the circumstances . . . incident to the correction of the newly arisen defect." [6] It was alleged in that case that a ship's rail which was habitually used as a means of egress to the dock was rendered unseaworthy by the presence of slime and gurry. We did not decide the issue, but reversed for a new trial under proper criteria, holding that the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability, and that he has an absolute duty "to furnish a vessel and appurtenances reasonably fit for their intended use." 362 U. S., at 550.

In the present case the Court of Appeals was of the view that the trial judge's determination of the *Grelmarion's* seaworthiness at the time the petitioners were injured was in no way inconsistent with our decision in the *Mitchell* case. We agree. The District Judge did not, as in *Mitchell,* hold that unseaworthiness liability depends upon the shipowner's actual or constructive knowledge. He did not, as in *Mitchell,* indicate that liability may be excused if an unseaworthy condition is merely temporary. Rather, as the Court of Appeals pointed out, the trier of the facts found, upon substantial evidence, that "the cause of the injury was not any defect in the ship but the fact that the last shot of grain which was being loaded was contaminated . . . ." 291 F. 2d, at 98.

The trial court found, upon substantial evidence, that what happened was an unexpected, isolated occurrence. Several years before there had been three, or perhaps four, incidents involving injury to longshoremen from grain *which had been fumigated by the city itself.* But at the time the present case arose the city had adopted a series of safety and inspection measures which made completely innocuous the grain which it fumigated, and

---

[6] 265 F. 2d 426, 432.

"vast quantities of wheat and other grains had been loaded through the elevator, some eight to ten percent of which had been fumigated by the city, without similar incident in recent years."[7] The court found that the fumes in the present case came from "chloropicrin, an insecticide which had never been used by the respondent city."[8] The petitioners question none of these findings here. Under these circumstances we cannot say that it was error for the court to rule that the absence of a forced ventilation system in the hold did not constitute unseaworthiness.[9]

A vessel's unseaworthiness might arise from any number of individualized circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The method of loading her cargo, or the manner of its stowage, might be improper. *Mahnich v. Southern S. S. Co.,* 321 U. S. 96; *Seas Shipping Co. v. Sieracki,* 328 U. S. 85; *Pope & Talbot, Inc., v. Hawn,* 346 U. S. 406; *Alaska Steamship Co. v. Petterson,* 347 U. S. 396; *Rogers v. United States Lines,* 347 U. S. 984; *Boudoin v. Lykes Bros. S. S. Co.,* 348 U. S. 336; *Crumady v. The J. H. Fisser,* 358 U. S. 423; *Atlantic & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd.,* 369 U. S. 355. For any or all of these reasons, or others, a vessel might not be reasonably fit

---

[7] 181 F. Supp., at 205.

[8] *Ibid.*

[9] ". . . While the Grelmarion's cargo spaces were not equipped with forced ventilation systems, I find that only very rarely is this the case on grain vessels, and that it is not necessary or customary. . . ."

"The finding heretofore has been made that the noxious gases and fumes were introduced into the bin with the last 'shot' of grain, and resulted from a fumigant that had been improperly applied, and that had adhered to the grain an unusually long period of time. Under these circumstances, I find that the admission thereof into the bin of the vessel did not cause the Grelmarion to become unseaworthy, the vessel and all its appurtenances being entirely adequate and suitable in every respect." 181 F. Supp., at 206–207.

for her intended service. What caused injury in the present case, however, was not the ship, its appurtenances, or its crew, but the isolated and completely unforeseeable introduction of a noxious agent from without. The trier of the facts ruled, under proper criteria, that the *Grelmarion* was not in any manner unfit for the service to which she was to be put, and we cannot say that his determination was wrong.

*Affirmed.*

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

The District Court found that the libellants were injured in 1957 as a result of a release into the hold of a "shot" of grain that completely closed the hatch opening, which was the only source of ventilation for the hold in which they were working. This grain had been treated by chemicals for weevil infestation; and the noxious fumes from those chemicals injured libellants.

The vessel's cargo spaces were not equipped with a forced ventilation system. Grain vessels, the District Court found, rarely are so equipped; and it concluded that forced ventilation is "not necessary or customary." If this were an isolated instance of fumigated grain releasing noxious gases, no claim of unseaworthiness could be maintained. But this was not an isolated instance. Of the wheat loaded through this elevator, some 8 to 10% was fumigated by the city. Wheat is commonly fumigated either in the elevators or in railroad cars. When the fumigant is properly applied, the gases and fumes are dissipated so as not to be dangerous or harmful after 24 to 48 hours. The District Court found, however, that to the knowledge of the owners of the vessel several recent

incidents like that in the present case had occurred in Galveston, causing injury to longshoremen—one in 1949, one in 1950, two in 1953.

A vessel without a forced ventilation system would be seaworthy if this injury were an unexpected, isolated occurrence. But I agree with Judge Rives of the Court of Appeals that the vessel and her appurtenances were not "reasonably fit for their intended use" (291 F. 2d 97, 99), where up to 10% of the grain loaded from this elevator was fumigated and where the owners had knowledge of like accidents. One "intended service" of this vessel was, therefore, the loading of fumigated grain which in the past had given off noxious fumes. Unseaworthiness by reason of the absence of a forced ventilation system is clearer here than it was in *Mitchell* v. *Trawler Racer, Inc.*, 362 U. S. 539, where temporary slime and gurry on the ship's rail rendered it unseaworthy. The unseaworthy condition in the present case had no such temporary span. What happened here shows that the vessel was unseaworthy whenever fumigated grain was being loaded.