360 F.2d 271
 Richard CARDALI, Libellant-Appellant,
v.
A/S GLITTRE, D/S I/S Garonne, A/S Marina, A/S Standard and International Terminal Operating Company, Respondents-Appellees-Appellants, and
Hooper Lumber Company, Respondent-Impleaded-Appellee.
 No. 269.
 Docket 28906.
 United States Court of Appeals Second Circuit.
 Argued March 10, 1966.
 Decided May 9, 1966.
 
 Jacob Rassner, New York City (Solomon J. Cohen, New York City, on the brief), for libellant-appellant.
 Francis X. Byrn, New York City (Edward J. McCarren, and Haight, Gardner, Poor & Havens, New York City, on the brief), for respondents-appellees-appellants A/S Glittre, D/S I/S Garonne, A/S Marina and A/S Standard.
 John Nielsen, New York City (Thomas O. Perrell, and Perrell, Nielsen & Stephens, New York City, on the brief), for respondent-appellee-appellant International Terminal Operating Co.
 Thomas J. Irving, New York City (Foley & Martin and Millard N. Bush, New York City, on the brief), for respondent-impleaded-appellee.
 Before SMITH, HAYS and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 The appellant, Cardali, was one of a group of carpenters which was engaged in building beds for a deck cargo of locomotives on M/S Fernleaf, while the vessel lay, starboard side to a pier, at Port Newark, New Jersey, on September 19, 1958. In arranging for the onloading of the locomotives, it became necessary to ship the Fernleaf's regular accommodation ladder and, for going aboard or leaving the vessel, to use, instead, a "brow gangway" from the pier to the top of the bulwark on the starboard side of the vessel and a set of steps or short ladder leading from the top of the bulwark to the deck. It is this set of bulwark steps, its position, design, measurements and the circumstances surrounding its use that create the principal issue in this case.
 
 
 2
 The appellant claims: that at about 2 p. m. he was ordered to go from the deck of the motor vessel, where he had been working, to the pier to assist in taking aboard some lumber; that at the time, because the bulwark steps were too short to reach and rest squarely on the deck, they were propped up by two pallets under which were some ship's dunnage and wedges; that when he was part way up the steps, the ladder leg on his left slipped between the slats of the pallet on which it was resting and twisted the ladder, so that he had to jump backward from the ladder; and that he landed on some pieces of lumber and was injured. He asserts that the shortness of the ladder demonstrated that it was not reasonably fit for the purpose for which it was being used and that, therefore, the ship was unseaworthy. He also claims that for the same reason the respondent-appellee stevedore, International Terminal Operating Company, was negligent.
 
 
 3
 At the trial the respondents-appellees introduced evidence which flatly contradicted Cardali and those who testified in his behalf. The respondents offered proof to the effect that the bulwark steps were properly designed and constructed for the purpose for which they were being used, that at the time in question there were no pallets, dunnage or other gear under the foot of the ladder and that the ladder properly fit the space from the top of the bulwark to the deck on which it rested.
 
 
 4
 The trial judge found that, at the time Cardali claims he was injured, the bulwark steps were in all respects seaworthy and that they were not propped up by pallets, dunnage or other gear. In view of the sharp conflict in testimony the court made specific findings, on the one hand, that the testimony of Cardali and much of that of his witnesses was unworthy of belief and expressly found, on the other hand, that the testimony of the witness Haagesen, the former third officer of the vessel, who gave evidence in flat contradiction of libellant's witnesses, was credible. The libel was dismissed and we affirm.
 
 
 5
 There was ample, clear and persuasive evidence to support the trial court's findings, and its judgment cannot be set aside unless there is some ground on which it can be held to be clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Morales v. City of Galveston, 370 U.S. 165, 168, 82 S.Ct. 1226, 8 L.Ed. 2d 412 (1962); Zim Israel Navigation Co., Ltd. v. United States Lines Co., 336 F.2d 150, 151 (2d Cir. 1964).
 
 
 6
 The appellant argues that such error was committed by the court in that part of its opinion which said,
 
 
 7
 "The testimony of the libellant is unworthy of belief. His own statements as to the description of the bulwark steps, number of pallets, amount of dunnage and ship's wedges are contradictory not only to his testimony by deposition but to that of the foreman, Alex Froner, who was also his uncle, and to that of his co-worker, George Forni. The position of the bulwark steps as described by libellant would make them impossible to use. The M/S Fernleaf had a list to port (offshore). If there were a pallet, dunnage and ship's wedges under the bulwark steps, the steps would be unusable as the list of the vessel, together with the insertion of a pallet, dunnage and wedges under the steps create an abnormal position rendering only the edge, rather than the `flat,' of each step accessible."
 
 
 8
 Appellant urges this court to take judicial notice of certain physical facts which, he asserts, will demonstrate the errors of the District Court.
 
 
 9
 He claims the testimony showed that the height of the bulwark and the length of the ladder were exactly the same, i. e., that each was 48 inches, and that the heel of the ladder was 2 feet out from the bulwark. Of course, if these assumed facts were so, the foot of the ladder, as appellant asserts, would not reach the deck. The testimony and arguments of this part of the case concern three measurements: (1) the length of the ladder; (2) the height of the bulwark; and (3) the distance from the bulwark along the deck to the back of the ladder leg. In the course of the examination of the witness Haagesen about one of the photographic exhibits, which had been taken directly facing the ladder as it stood in situ, fastened to the bulwark and resting on the deck, he was asked about the distance from the deck to the top of the bulwark along a ruler or measuring tape, which showed in and as a part of the photograph, as running from a point on the deck in front of the foot of the ladder to a point at the top of the bulwark rail. This line ran at an angle. It was not perpendicular to the deck and did not give the height of the bulwark, measured in a perpendicular line from the deck. The measurement Haagesen gave was, as he testified, the length of the ladder. Appellant seizes upon this as evidence from a witness, whom the court expressly found to be credible, that the length of the ladder and the height of the bulwark were each 4 feet. The same witness had, a little earlier in his testimony, said that the height of the bulwark was approximately 3.5 feet which, from the mathematical standpoint, must be more nearly correct. The lines mentioned form a right angle triangle, which the appellant concedes, and he also says that the back of the foot of the ladder was 2 feet out from the bulwark at the deck level.[1] As the four foot ladder forms the hypotenuse of the triangle, the bulwark, as one of the other sides, could not be 4 feet high. He argues that it was and that this simply serves to demonstrate that the ladder was too short to reach the deck. But the photographs, from which the testimony of the claimed reliable measurements derive, show the feet of the ladder resting squarely on the deck and the top of the ladder at the rail of the bulwark. This argument must, therefore, be rejected.
 
 
 10
 Appellant also claims that the trial court arrived at its conclusion that the libellant's testimony was not worthy of belief because of an erroneous theory or misconception which the trial judge had adopted concerning the position of the bulwark ladder, as described by the libellant, from which the judge concluded that the ladder would have been so tilted-up that only the edges of the steps would have been accessible and the ladder could not have been used. Appellant claims that the trial court implicitly assumed that the vessel's port list, which would cause the deck to slope away from the bulwark ladder, which was on the starboard side, would tend to tilt the ladder up in addition to any props put under the foot of the ladder, when in fact the port list would tend to tilt the outer edges of the treads of the ladder steps downward. It is, of course, obvious that the steps of the ladder remain parallel with the deck when the ship is listing and, as the deck slopes down to port, so do the treads of the steps. There was no evidence whatever in this case as to the degree of the list. That there was some, which was caused by the loading of locomotives on the starboard side, appeared to be generally conceded, but there was no testimony as to its degree or effect. Certainly the trial court was aware that evidence was lacking in these respects, and, although it was mentioned off and on during the trial, no one, including the libellant, felt that it was of sufficient importance to prove what it actually was. It is not certain that Judge Levet misconceived its effect because, assuming a given height of the props under the foot of the ladder, it is plain that, though the vessel's list might slightly reduce the amount of up-tilting of the steps, it is more difficult to get onto a propped up ladder from a sloping deck than it is from a level deck. If, however, he was mistaken in the effect of the list on the pitch of the steps of the ladder, its relative consequence is so minor that it would not warrant remanding the case for further findings or for a new trial.
 
 
 11
 There was sufficient in the appellant's description of the bulwark steps, number of pallets, amount of dunnage and ship's wedges to support the trial court's finding that, had they been true, the bulwark steps would have been impossible to use. The appellant's testimony was widely inconsistent in describing some of the principal factors involved. He said at one time or another that the length of the ladder was 4 feet, 5 feet, 6 feet, 7 feet and finally 4½ feet, and that the bulwark was 4 feet high. He said on several occasions that there were two pallets under the foot of the ladder, and at another time said he was not positive that there were two but that there was definitely one. He said there were six, seven or eight steps. He testified that under the two pallets, each of which was 6 inches thick, there was a piece of ship's dunnage which ran fore and aft and that another shorter piece of dunnage had been placed under one end of the fore and aft piece and two oak wedges had been placed under the other end. While no measurements were given for the dunnage or wedges, it would not be unreasonable to infer that the thickness of the one pallet, plus the fore and aft piece of dunnage, plus the shorter piece and the wedges, would have raised the foot of the ladder about 14 inches. It is interesting to note in this connection that Forni, one of the carpenters working with Cardali, when questioned about what he had said in a written statement prior to trial, which was in evidence in the case, testified as follows:
 
 
 12
 "Q. Having read the statement, does it refresh your recollection that the ladder was not entirely resting on a pallet but was resting in part on a piece of lumber that you had erected? A. No, sir, it was not. It was resting on a pallet.
 
 
 13
 "Q. How do you account for the fact that in that statement you say it was resting in part on a piece of lumber that the carpenters had erected? A. Well, I could answer that very easily. Over here — may I read some of this?
 
 
 14
 "The Court: Yes.
 
 
 15
 "A. (Continuing) It says here, `resting on a part of the 6 × 8.' If the pallet was resting on a 6 × 8, the whole thing would be at an extreme tilt and the whole thing would be off whack and you couldn't walk up that ladder.
 
 
 16
 "The Court: Was it so?
 
 
 17
 "The Witness: No, sir.
 
 
 18
 "The Court: How do you account for this statement, then?
 
 
 19
 "The Witness: I don't know, sir." The trial court had many reasons beside any possible misconception about the effect of whatever list the vessel had to disbelieve the libellant's testimony, and it is clear that the court was fully persuaded that there were, at the time of the accident, no props at all under the ladder and that it was in no respect unseaworthy. The photographic exhibits and Haagesen's testimony strongly support these findings. The trial court also had the advantage of hearing and observing those who testified.
 
 
 20
 Under the circumstances the findings should remain undisturbed and there is no basis for holding that the court's conclusion was clearly erroneous. Massa v. C. A. Venezuelan Navigacion, 332 F.2d 779, 781 (2d Cir.), certiorari denied 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 186 (1964); Mayer v. Zim Israel Navigation Co., 289 F.2d 562 (2d Cir. 1960); Purcell v. Waterman Steamship Corp., 221 F.2d 953 (2d Cir. 1955); and Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 175 F.2d 77, 80 (2d Cir. 1949).
 
 
 21
 The appellant also claims that the District Court erred in excluding testimony concerning the condition of the bulwark steps an hour or more after the accident. A ruling of this kind rests in the discretion of the trial court and we are not of the opinion that in this case the discretion was abused. Oklahoma Natural Gas Co. v. Ross, 131 F.2d 238, 240 (10th Cir. 1942); 2 Wigmore, Evidence § 437 at 417 (3rd ed. 1940). The remaining points raised on this appeal do not merit further discussion.
 
 
 22
 The decree of the District Court is affirmed and the appeals from the dismissal of the cross-libel and impleading petitions are dismissed as moot.
 
 
 23
 HAYS, Circuit Judge, concurs in the result.
 
 
 
 Notes:
 
 
 [1]
 In their briefs the parties mention factors which have to be considered to make the measurements more precise, such as the width of the side pieces of the ladder, the width of the bulwark rail, etc. The figures referred to from the testimony are, therefore, approximate but serve to illustrate the principle involved