Joseph NOBLE, Plaintiff-Appellant,

v.

**LEHIGH VALLEY RAILROAD CO., and Hellenic Lines, Ltd., Respondents.**

**HELLENIC LINES, LTD., Third-Party Plaintiff,**

v.

**PITTSTON STEVEDORING CORP., Third-Party Defendant.**

**LEHIGH VALLEY RAILROAD CO., Third-Party Plaintiff,**

v.

**WILLIAM SPENCER & SON CORP. and Pittston Stevedoring Corp., Third-Party Defendants.**

No. 245, Docket 31820.

United States Court of Appeals Second Circuit.

Argued Jan. 2, 1968.

Decided Jan. 23, 1968.

Jack Steinman, Brooklyn, N. Y. (Santagata & Santagata, Brooklyn, N. Y., Benjamin J. Sergi, Brooklyn, N. Y., of counsel), for appellant.

Edwin K. Reid, New York City (Zock, Petrie, Sheneman & Reid, New York City; Howard M. McCormack, New York City, of counsel), for Hellenic Lines, Ltd.

Alan H. Buchsbaum, New York City (Alexander, Ash & Schwartz, New York City; Sidney A. Schwartz, New York City, of counsel), for Pittston Stevedoring Corp.

Timothy V. Smith, New York City, for Lehigh Valley R. Co.

Before LUMBARD, Chief Judge, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

Noble, a longshoreman employed by Pittston Stevedoring Corporation, was injured in the course of the loading of cargo from a lighter owned by the Lehigh Valley Railroad to the S.S. Hellenic Sailor owned by Hellenic Lines, Ltd. Alleging diverse citizenship, he brought this action in the District Court for the Eastern District of New York against the two owners to recover for breach of their warranties of seaworthiness. Hellenic impleaded Pittston on the usual grounds; Lehigh impleaded Pittston and also Wm. Spencer & Son Corp. with which it had a general stevedoring agreement. The jury returned negative answers to questions whether either of the owners had breached its warranty. The court thereupon entered judgment for the owners and stayed proceedings on their third party claims pending appeal.

Noble was acting as a signal-man, stationed on the Hellenic Sailor, which Pittston, his employer, was loading with cargo from the Lehigh Valley lighter. Part of the cargo was a heavy tractor resting on a platform or "pallet" supported by two wooden beams or "skids"; these were separated at each end by crossbeams and contained a slot to engage the cables of the ship's tackle. The tractor itself was crated and was stabilized with wood chocks. After Noble's fellow-employees on the lighter had attached a sling to the slots, he signalled another employee acting as winchman on the Hellenic Sailor to lift the crate. While it was suspended above the deck of the Hellenic Sailor, a piece of wood fell and struck Noble.

There was general agreement that the warranty of seaworthiness attaches to ships' gear, that the skids and pallet were part of the gear because they were part of the "ship's lifting mechanism," and hence that the ship would be liable if the piece of wood had fallen from them.[1] However, the trial judge was deeply and reasonably troubled over the legal problems and economic burdens involved in extending the absolute liability imposed under the warranty of seaworthiness to cargo containers per se. Therefore he instructed the jury to determine whether the wood which struck the plaintiff came from "the lifting part of the container," the skids and pallet, or rather from some other part of the container, i. e., the crating material or the chocks; the warranty would attach upon the first finding but not upon the second. The jury, evidently making the second finding, held the Hellenic Sailor seaworthy.

The judge was obviously influenced by our decision in Carabellese v. Naviera Aznar, 285 F.2d 355, 90 A.L.R. 2d 701 (2 Cir. 1960), cert. denied, 365 U.S. 872, 81 S.Ct. 907, 5 L.Ed.2d 862 (1961), although there the alleged danger could be said to have lain in the cargo rather than in the container, 285 F.2d at 359-360, and it still appears to be true that the ship does not warrant the seaworthiness of the cargo. Morales v. City of Galveston, 370 U.S. 165, 171, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962); Bell v. Nihonkai Kisen, K.K., 204 F.Supp. 230 (D. Or.1962); Lucas Flood Tide: Some Irrelevant History of the Admiralty, 1964 Supreme Court Review, 249, 253-254. For the law with respect to containers we must look to Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), and Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L. Ed.2d 297 (1963). Although the defendants can distinguish *Atlantic & Gulf* on the basis that the metal bands that broke were being used as part of the ship's lifting mechanism, see Bell v. Nihonkai Kisen, K.K., supra, 204 F.Supp. at 233-234, and the judge here charged that if the jury found the fallen wood to have been a lifting device the warranty was broken, that still leaves *Gutierrez*, which is a harder nut to crack. To be sure, the decision can be distinguished on its facts; it was an unloading case and the broken bean bags could be regarded as within the long recognized warranty of seaworthiness of the stow. Reddick v. Mc-

---

1. In this portion of the discussion we deal only with the Hellenic Sailor.

Allister Lighterage Line, Inc., 258 F.2d 297, 299 (2 Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229 (1958); Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704, 707 (2 Cir. 1960). But the language of the opinion goes further. Mr. Justice White defined "the seaworthiness doctrine" as being "in essence that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used"; and continued, "A ship that leaks is unseaworthy; so is a cargo container that leaks." 373 U.S. at 213, 83 S.Ct. at 1190. Although the Court must have been aware that cargo containers are normally furnished by shippers, the opinion thus equated the container with the ship and drew no distinction between a container already loaded and one being loaded. In United States Lines Co. v. King, 363 F. 2d 658, 661 (1966), the Fourth Circuit upheld direction of a verdict of unseaworthiness irrespective of whether bands around bundles of lumber were "utilized by the ship as an instrument of loading" or merely "served as a container," adding that "No distinction is presently justified between unloading and loading." Since we too believe *Gutierrez* leads to that conclusion, the judge should therefore have charged that Hellenic Lines would be liable if the container was not reasonably fit for its purpose—whether the piece of wood was part of the lifting mechanism or served only to protect the cargo.

■■ The situation as to the Lehigh Valley is different. Only a few cases have considered the application of the unseaworthiness doctrine to claims of longshoremen against such "vessels" as lighters and barges which characteristically have no crews or very small ones. See Williams v. Pennsylvania R.R. Co., 313 F.2d 203, 206–208 & n. 3 (2 Cir.

1963), and cases cited. Doubtless a leaking barge would be held for unseaworthiness, under Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), to a longshoreman working on it on the basis that he was performing work that would have been performed by the crew of the barge if it had any. See Bochantin v. Inland Waterways Corp., 96 F.Supp. 234 (E.D.Mo.), appeal dismissed on appellants' motion, 191 F.2d 734 (8 Cir. 1951) [owner of barge lacking adequate life-saving equipment liable for unseaworthiness to employee of shipper engaged in loading operations thereon]. We assume also that the barge's warranty to such longshoremen would include containers on the barge, however harsh that may be; indeed, Reddick v. McAllister Lighterage Line, Inc., supra, was just such a case. Noble, however, was working not on the barge but on the Hellenic Sailor, in a task, to wit, directing the winchman, which there is no evidence the Lehigh Valley was under any duty to perform. We are not aware that there was ever a time when lighters sent their "crews" onto ships that were being loaded from them. While the mere fact that the injury to Noble did not take place on the lighter is inconclusive, as *Gutierrez* settled, 373 U.S. at 214–215, 83 S.Ct. 1185, the injured person must still bring himself within the class to whom the warranty extends. As we said in *Williams*, supra, 313 F.2d at 206, "What is critical, however, is not where the effect of the alleged unseaworthiness of the vessel operates, but upon whom." In *Sieracki* terms, Noble was a putative crew member of the Hellenic Sailor, not of the Lehigh Valley's barge.[2]

We therefore affirm the judgment dismissing the complaint as to the Lehigh Valley and direct dismissal of its third party complaints; we reverse the judgment dismissing the complaint against Hellenic Lines, Ltd., and direct a new

---

2. The accuracy of Mr. Justice Rutledge's history, even in the typical *Sieracki* situation, has been sharply challenged. See Tetreault, Seamen, Seaworthiness and the Rights of Harbor Workers, 39 Cornell L. Q. 381, 412–414 (1954); Shields and Byrne, Application of the "Unseaworthiness" Doctrine to Longshoremen, 111 U. Pa.L.Rev. 1137, 1139–1147 (1963).

trial consistent with this opinion. If Hellenic or Pittston desires to implead the shipper, leave should be granted. Plaintiff may recover his costs on appeal against Hellenic; Lehigh Valley may recover its costs against plaintiff.