Gully WILSON, Plaintiff,

v.

**SOCIETA ITALIANA DE ARMAMENTO (SIDARMA), Defendant.**

Civ. A. No. 15700.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 2, 1968.

Irving Novick, Leonard B. Levy, Dufour, Levy, Marx & Lucas, New Orleans, La., for plaintiff.

Thomas W. Thorne, Jr., Lemle & Kelleher, Walter Carroll, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

BOYLE, District Judge:

Plaintiff, Gully Wilson, brought this suit, basing jurisdiction upon diversity of citizenship and the General Maritime Law, seeking to recover damages for injuries he sustained while working as a longshoreman aboard the S/S ANDREA GRITTI, owned and operated by the defendant, Societa Italiana de Armamento (Sidarma). The defendant impleaded the stevedore-employer of the plaintiff, which in turn intervened for the amount paid plaintiff in the form of compensation and medical expenses.

Trial by jury, originally requested, having been waived and the third-party complaint against the stevedore having been dismissed with prejudice, this case was tried to the Court on December 18, 1967 on the issues between the plaintiff and the vessel owner. On January 4, 1968, the Court rendered a judgment in favor of the defendant and against the plaintiff, dismissing the complaint at plaintiff's costs, and in connection therewith the Court now enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

**1.**

On August 19, 1964, plaintiff, Gully Wilson, was an employee of T. Smith & Son, Inc. and was engaged in the course and scope of his employment as a longshoreman, working aboard the S/S ANDREA GRITTI, which was owned and operated by the defendant, Societa Italiana de Armamento (Sidarma), and was then afloat in the Mississippi River at New Orleans.

**2.**

Plaintiff, with the aid of his fellow longshoremen, had been loading bales of pulp paper in a wing of the vessel. Each bale was approximately four feet long, two feet wide, and one and one half feet high (4′ x 2′ x 1½′) and weighed between two hundred and three hundred pounds. These bales were being loaded from and parallel to the skin of the ship toward the coaming of the hatch and had already been stacked three high lengthwise.

**3.**

Near the hatch opening and the area in which the bales were then being stacked, there was a vertical post or stanchion, as well as an overhead beam, neither of which prevented the stacking of the bales. That the post or stanchion and beam were not a fixed and permanent part of the vessel is not established by the evidence.

**4.**

The gang, of which plaintiff was a member, consisted of six longshoremen. Two of the members would bring the bales to a spot near where they were to be stowed and the other four, including plaintiff, would then lift and position the bales on the stack. Plaintiff and his fellow longshoremen were in the process of stowing the fourth tier or layer of bales which necessitated that the bales be lifted approximately five feet above the deck in order to clear the top of the other three layers.

**5.**

When the loading of the fourth tier had reached the area of the hatch near the post and the beam, the plaintiff and three other men, one at each corner of the bale, were attempting to place a fourth bale atop the third of three bales already stacked when that bale, instead of going up into position, unexplainedly bounced or fell in such manner that it struck plaintiff on the head, pinning him against the post between which and the

already stowed bales plaintiff was positioned when he and his fellow workers attempted to stow the fourth bale.

6.

The presence of the post and beam did not interfere with the positioning of the bale that fell, although the presence of the beam did require that the plaintiff, who was six feet two inches tall, crouch somewhat when working or passing beneath it.

7.

The testimony clearly establishes that the bale fell down so quickly that the plaintiff did not have any opportunity to retreat. Hence, the presence of the post did not impede, inhibit, or otherwise prevent plaintiff from escaping the falling bale, and under the circumstances the falling bale would have struck plaintiff even if the post were not present.

8.

There were no ship crewmen present in the area of the accident at the time of its occurrence, the longshoremen being then under the direct supervision and control of their employer.

## CONCLUSIONS OF LAW

1.

This Court has jurisdiction over the parties and the subject matter of this suit, and venue is properly laid in the Eastern District of Louisiana.

2.

■ The shipowner warrants to longshoremen, charged with the duty of loading cargo, that the vessel and its gear will be reasonably fit for its intended use.[1] This duty is absolute.[2]

3.

■ The shipowner is not required to provide an "accident free" ship. He is under a duty "only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness, not a ship that will weather every conceivable storm or withstand any imaginable peril of the sea, but a vessel reasonably suitable for her intended service."[3]

4.

■ The shipowner owes to business invitees, including longshoremen working aboard his vessel, the duty of exercising reasonable care to provide them a reasonably safe place in which to work. The breach of this duty proximately resulting in injury to a longshoreman gives rise to an action against the shipowner based upon negligence under the General Maritime Law.[4]

5.

■ "The ship has no duty to actively supervise loading work, but if the ship has knowledge of a condition dangerous to the longshoremen or, in the exercise of ordinary care it would have had such knowledge, it owes them a duty to use reasonable care to prevent injury to them."[5]

6.

■■ The plaintiff bears the burden of proving by a preponderance of the evidence that the shipowner was negligent or that the vessel was unseaworthy and that such negligence and/or unseaworthiness was a proximate cause of his injuries. The mere occurrence of an accident aboard ship does not render the vessel owner liable.

1. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

2. Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922).

3. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). See also Mills v. Mitsubishi Shipping Co., 358 F.2d 609 (5th Cir., 1966).

4. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Morales v. City of Galveston, Texas, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962); Price v. SS "Yaracuy," 378 F.2d 156 (5th Cir., 1967).

5. Price v. SS "Yaracuy," 378 F.2d 156 (5th Cir., 1967) and the cases cited therein.

**7.**

 The plaintiff failed to prove any negligence whatever on the part of the vessel owner.

**8.**

The plaintiff failed to prove that his injuries were a proximate result of any unseaworthy condition aboard the vessel. The fact that the plaintiff was required to work in relatively close proximity to the stanchion and beam did not create an unsafe place to work or an unseaworthy vessel.[6] Even if the vessel had been rendered per se unseaworthy by the loading of cargo in the vicinity of the post and beam (which this Court does not find), such unseaworthiness was not the proximate cause of the accident. The proximate cause of the accident was the unexplained failure on the part of plaintiff and his fellow longshoremen to lift and position the bale.

**9.**

A vessel can be rendered unseaworthy by the negligence of employees of an independent contractor aboard the vessel, if such negligence precedes the accident by sufficient time to create an unseaworthy condition, that is, if the negligence and the injury are not simultaneous or instantaneous.[7] Here again the plaintiff has failed to prove any negligence on the part of his fellow longshoremen who with plaintiff successfully stacked other bales on the same level as that on which they attempted to stack the bale which fell. All plaintiff has proven is that the bale fell. Even assuming that negligence should be inferred from the mere falling of the bale, such negligence would not only be instantaneous and simultaneous with plaintiff's injury, but it would also have to be attributed undifferentially and indistinguishably to the four longshoremen, including plaintiff himself, who were then attempting to position the bale. Such an inference would, of itself, preclude recovery.

**10.**

The defendant is entitled to judgment dismissing the complaint at plaintiff's costs.

---

6. Luna v. Kawasaki Kisen Kaisha, Ltd., 245 F.Supp. 152 (S.D.Cal., 1965).

7. Antoine v. Lake Charles Stevedores, 376 F.2d 443 (5th Cir., 1967), cert. denied Antoine v. Lykes Brothers Steamship Company, 389 U.S. 869, 88 S.Ct. 145, 19 L.Ed.2d 146 (1967); Robichaux v. Kerr McGee Oil Industries, Inc., 376 F.2d 447 (5th Cir., 1967); Dugas v. Nippon Yusen Kaisha, 378 F.2d 271 (5th Cir., 1967), cert. denied 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 667 (1967). But compare Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967); Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961 (2nd Cir., 1967), reh. denied 386 F.2d 444 (1967); Alexander v. Bethlehem Steel Corporation, 382 F.2d 963 (2nd Cir., 1967).