**Laura L. SMITH, as Administratrix of the Estate of Tommie Lee Smith, Deceased, Plaintiff,**

v.

**CENTRAL GULF STEAMSHIP CORPORATION and the S. S. GREEN FOREST, her engines, hull, tackle, cargo and appurtenances thereof, Defendant.**

**Civ. A. No. 6502–71–T.**

United States District Court,
S. D. Alabama, S. D.

May 23, 1972.

Judgment Vacated and Cause Dismissed
July 31, 1972.

Ross Diamond, Jr., Mobile, Ala., for plaintiff.

George F. Wood, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

This matter comes before the Court on motion for summary judgment filed by the defendant Central Gulf Steamship Corporation pursuant to Rule 56 of the Federal Rules of Civil Procedure. After hearing oral argument by both parties and after reviewing the pleadings, depositions and briefs submitted in this case, the Court is of the opinion that there is no genuine issue as to any material fact and that the defendant's motion for summary judgment should be granted. Upon granting said motion, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. This is a suit filed by Laura L. Smith, as Administratrix, to recover damages suffered as a result of the death of her husband, Tommie Lee Smith. The claim invokes both the diversity jurisdiction of the District Court under 28 U.S.C. § 1332 and its Admiralty and Maritime jurisdiction under 28 U.S.C. § 1333.

2. On January 7, 1971, Gulf Stevedoring Company began discharging the SS GREEN FOREST at Pier C South, Alabama State Docks, Mobile. Discharging was completed on January 12 and the loading of outbound cargo commenced on January 13. The cargo discharged from the SS GREEN FOREST consisted of various military equipment including a number of large M-48 Tanks which had been used in the Vietnam war. On January 12, 1971, one of these tanks had been unloaded from the vessel directly onto a railroad flatcar which, in turn, rested on tracks situated on the pier adjacent to the unloading berth. The flatcar was then moved by the stevedore from the immediate area of the unloading to a point some 100 feet from the stern of the vessel. All of the labor involved in discharging the tank, placing it on the flatcar and moving the flatcar away from the vessel was performed by longshoremen in the employ of Gulf Stevedoring Company. Its su-

perintendent, Frank E. Bartlett, testified in his deposition that the stevedore had no further duties with regard to this tank. The records of his company showed that all cargo which was to be discharged from the SS GREEN FOREST had been discharged on or before January 12. The accident and death with which this suit is concerned occurred on January 13, 1971.

3. At about 9:45 on the morning of January 13, Tommie Lee Smith, an employee of Alabama State Docks, entered into the tank referred to earlier for the purpose of making some final adjustment to the tank. It had already been secured onto the flatcar by means of chocks and lashings for transportation by rail as directed by the United States Government. The arrangements for these services in securing the tank on the rail car had been made with the Alabama State Docks by the United States, as the owner of the military cargo concerned. This work was carried out by State Docks personnel under State Docks supervision. While Smith was inside the tank, an explosion occurred and he was killed. Indications are that a live grenade or shell inside the tank was set off.

4. Suit was filed *in personam* and *in rem* against the ship and its owners charging unseaworthiness and negligence in the failure to furnish a reasonably safe or seaworthy place to work, as the proximate cause of the death. Defendant has moved for summary judgment.

## CONCLUSIONS OF LAW

1. Since the decision in Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, decided in 1946, longshoremen actively engaged in work traditionally done by seamen have been within the class of those persons to whom a shipowner owes the duty of a seaworthy vessel. In Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) the protection was extended to those members of the class injured on

the pier by virtue of a defect of the vessel itself or of an appurtenance, expressly making use of the Admiralty Extension Act of 1948. Thus, recovery was permitted when a container in which the cargo was being discharged proved faulty and created a dangerous condition on the dock from which a *Sieracki* seaman was injured. The same result would follow if, for example, a defective winch dropped a load of cargo onto a discharging longshoreman on the pier.

2. With the decision in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, the Supreme Court gave expression to the implied limitation that the injury must occur on the vessel or its gangway or within circumstances giving rise to the application of the Admiralty Extension Act, as in *Gutierrez.* The principles enunciated in *Law,* control the instant case since Smith met his death while on a rail car, on the pier, which had been removed from the discharge point, and in the course of preparation by the cargo owner for the transportation of the cargo by rail. The effective cause of the death arose from the nature of the cargo itself rather than from some defect of the ship, its equipment, gear, and appurtenances, including cargo containers. The tank itself was the cargo, not a container. Bell v. Nihonkai Kisen, K.K. et al., D.C., 204 F.Supp. 230; See also, Morales et al. v. City of Galveston et al., 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412.

3. The facts of the instant case remove it even further behind the barrier made solid by *Law.* Smith was not a longshoreman, but was engaged by the cargo owner, through his employer, the Alabama State Docks, to prepare the tank for shipment by rail. He was, therefore, not a *Sieracki* seaman. He was not even in the service of the vessel and was not performing a duty traditionally imposed on seamen. Thus, both

by reason of the location of the accident on the shore and the status of Smith at the time he met his tragic death, neither the SS GREEN FOREST nor her owners owed him any duty of seaworthiness.[1] See Cannida v. Central Gulf Steamship Corp., 452 F.2d 949 (3 Cir. 1971). See also State Industrial Commission v. Nordenholt Corp., 259 U.S. 263, 273, 42 S.Ct. 473, 66 L.Ed. 933 citing Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321.

It is therefore ordered, adjudged and decreed that the defendant's motion for summary judgment should be and the same hereby is granted.

Plaintiff's case is dismissed with prejudice. No further costs taxed.

---

1. While the complaint alleged negligence as well as unseaworthiness, it was inextricably linked with the charge of unseaworthiness in that it was described as a failure to furnish a safe and seaworthy place to work. The Court finds no duty on the vessel or owners to furnish a safe place to work to Smith under the circumstances nor is there evidence of negligence appearing in the instant case.