Henry A. SACILLOTTO, Plaintiff,

v.

NATIONAL SHIPPING CORPORATION et al., Defendants.

NATIONAL SHIPPING CORPORATION, Defendant and Third Party Plaintiff,

v.

JOHN T. CLARK & SON OF MARYLAND, INC., et al., Third Party Defendants.

Civ. A. No. 70–777W.

United States District Court, D. Maryland.

May 30, 1974.

Joseph P. Lentz, Jr., Baltimore, Md., for plaintiff.

Richard R. Jackson, Jr. and Robert V. Barton, Jr., Baltimore, Md., for defendant National Shipping Corp.

R. Roger Drechsler, Baltimore, Md., for third party defendant John T. Clark and Son of Maryland, Inc.

Donald C. Allen and J. Edward Martin, Jr., Baltimore, Md., for defendant John S. Connor, Inc.

David R. Owen and Francis J. Gorman, Baltimore, Md., for defendant Bethlehem Steel Corp.

Paul V. Niemeyer, Baltimore, Md., for defendant, United States Steel Corp.

## MEMORANDUM OPINION AND ORDER

WATKINS, District Judge.

Henry A. Sacillotto has brought suit in this Court seeking to have it exercise its Admiralty jurisdiction Fed.R.Civ.P. Rule 9(h),[1] in regard to an injury which he suffered in an accident while he was engaged in loading the SS Chenab. The Defendants have moved alternatively to dismiss the case for want of jurisdiction or for summary judgment. For the reasons set out below, Defendants' motion to dismiss will be granted and the case dismissed.

The essential facts of this case are undisputed. Plaintiff, a longshoreman, was engaged in the loading process as an employee of the stevedore (third party defendant), John T. Clark & Co. At the time of the occurrence in question, Plaintiff and his work gang were endeavoring to remove from an open top gondola car, which was sitting alongside the SS Chenab, twenty foot long steel billets measuring four inches by four inches in width. These billets had been placed in the gondola car by the shipper[2] in two stacks, for balance, one over each set of wheels, and were stacked loosely or had been placed in the gondola car with wooden chocks to separate them while still red hot, causing the chocks to burn out. In any event, they were "dumped in there loose" (Plaintiff's deposition at p. 12) at the time of the unloading of the gondola and loading of the ship.

Plaintiff's job on this particular day was to take a "breaking out" wire and place it underneath eighteen billets at a time which were then lifted up slightly allowing Plaintiff to put a wooden chock under the bunch. The lifting was performed by the ship's boom. Normally, after the chock is put in, the billets are lifted higher and the wire is moved further along to prevent slippage and then

---

1. Plaintiff also seeks to invoke diversity jurisdiction but since complete diversity does not exist, this Court is without such jurisdiction.

2. The shipper was alleged to have been either United States Steel or Bethlehem Steel.

a chock is placed under the other end of the batch by another longshoreman to allow chains to be placed around the group of billets for lifting onto the ship. When the billets were lifted after chocking, a loose billet, one not in the batch being lifted, which had been bowed from the weight of the billets above it, sprang up and hit Plaintiff injuring him. (Plaintiff's deposition at p. 26). According to Plaintiff, the actual cause of the accident was the failure to have chocks between the billets while in the gondola car and thus allowing such a bowing to occur from the weight of the billets scattered above it. (Plaintiff's deposition at pp. 32–35). He testified that such bowing often occurs in unchocked loads but is unlikely to occur when chocks are properly placed between them. (Plaintiff's deposition at p. 34). He further testified that the unloading was being done in the normal manner and that the ship's gear was working properly. (Plaintiff's deposition at pp. 25–26).

In his complaint, Plaintiff proceeded to allege in boiler plate fashion both the negligence of the Defendants and unseaworthiness of the vessel each based upon five possible theories (among others):

a. failing to provide the Plaintiff with a safe place to work;

b. failing to supply the Plaintiff with proper gear and safety equipment for working said cargo;

c. failing to provide the Plaintiff with a sufficient number of competent co-workers;

d. failing to inspect the working area where the work was performed so as to warn the Plaintiff of the dangerous conditions thereon;

e. failing to have a safe plan of operation.

In his answers to the interrogatories propounded to him, Plaintiff specified that his claim of unseaworthiness of the SS Chenab arises from ship Defendant's:

1. failure to have a safe plan of operation in allowing the going cargo to be placed in the unsafe and dangerous condition;

2. failure to properly inspect the working area;

3. failure to warn Plaintiff of the dangerous and unsafe condition of the billets; and

4. failure to supply a safe place to work.

Thus, Plaintiff apparently has abandoned theories b and c of his unseaworthiness allegation.

■ Unseaworthiness arising from failure to inspect and warn of the discovered dangerousness of the going cargo is factually inapplicable since Plaintiff himself testified at deposition to having had a full awareness of the danger prior to the accident. (Plaintiff's deposition at p. 24). The same reasoning would apply to these two theories of negligence.

Again from the facts it appears that neither the alleged failure to supply proper gear and safety equipment nor a sufficient number of competent co-workers contributed in any way to the accident. Plaintiff testified that the equipment was working properly and no demonstration has been made of a causal nexus between the actions or inactions of a co-worker and the injury to Plaintiff or that the use of an additional co-worker might have prevented the accident.

Thus, the only remaining theories which are factually suitable for discussion of their legal merit are:

I. Negligence.
   A. Failure to provide a safe place to work.
   B. Failure to provide a safe plan of operation.

II. Unseaworthiness.
   A. Failure to provide a safe place to work.
   B. Failure to provide a safe plan of operation in allowing the going

cargo to be placed in an unsafe and dangerous condition.

Each of these possible theories is merely an attempt to put into "legalese" this basic question: Whether the ship can be held responsible for an injury to a longshoreman loading the ship which was the result of the cargo having been placed into a gondola for transport to the ship in a dangerous fashion where the injury occurs during that phase of the loading operation which transpired on shore. In other words, does the failure by the shipowners to prevent the shipper's negligence from injuring Plaintiff either by developing a suitable plan of operation or possibly insisting that the shipper properly load the cargo in the gondola (i.e. require the gondola be a safe place to work), give rise to liability of the shipowner?

■■ It is clear that a defective or unsafe plan of operation for loading the ship can render a ship unseaworthy. Tucker v. Calmar Steamship Corporation, 457 F.2d 440 (4 Cir. 1972). Similarly, the failure to provide a reasonably safe place to work can render a ship unseaworthy. Croley v. Matson Navigation Company, 439 F.2d 788 (5 Cir. 1971), Calderola v. Cunard Steamship Co., 279 F.2d 475 (2 Cir. 1960). Either theory may, of course, constitute actionable negligence and generally, these duties are non-delegable. Petterson v. Alaska S.S. Co., Inc., 205 F.2d 478 (9 Cir.), aff'd Alaska S.S. Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L. Ed. 798 (1954), M. Norris, Maritime Personal Injuries 2d Ed. at p. 83 (1966).

However, the jurisdictional question is more difficult, because while there may arguably be theoretical tort or liability of the ship under these facts, the admiralty jurisdiction of the court will not be as extensive. Thus, it is possible to spell out a "good" claim sounding in negligence or unseaworthiness and yet not fall within the jurisdiction of the Court. Such distinctions must be drawn as a result of recent Supreme Court "teaching" on the subject of the shoreward extent of admiralty jurisdiction.

In Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1962) the Court found that the Extension of Admiralty Jurisdiction Act, 62 Stat. 496, 46 U.S.C. § 740 which provides that vessels on navigable water are liable for damage or injury "notwithstanding that such damage or injury be done or consummated on land" was the proper jurisdictional basis upon which a longshoreman could recover where he was injured during the unloading process when he slipped on beans spilled from a defective cargo container which had been part of the ship's cargo. The Court stated that since the ship was "negligent in allowing the beans to be unloaded in their defective bagging, when it knew or should have known that injury was likely to result . . ." coupled with the breach of its absolute, non-delegable duty towards the longshoreman engaged in the unloading process, the ship was liable. (At p. 210–211, 83 S.Ct. at p. 1188). The Court specifically rejected the reading of the statute which would have limited the reach of the statute

"to injuries actually caused by the physical agency of the vessel or a particular part of it—such as when the ship rams a bridge or when its defective winch drops some cargo onto a longshoreman." (P. 209–210, 83 S.Ct. p. 1188).

The Court's specific holding was:

"the case is within the maritime jurisdiction under 46 U.S.C. § 740 when, as here, it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." (At p. 210, 83 S.Ct. at p. 1188, footnote omitted).

■ As the law stood after *Gutierrez*, the facts of the instant case would seem to fall within the admiralty jurisdiction insofar as the ship was arguably negli-

gent in not insisting upon proper chocking by the shipper or devising a safe plan to deal with unchocked loads, and the impact of this arguable negligence was felt ashore during loading nowise remote in time or place. However, Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) restricts the applicability of the *Gutierrez* approach and renders this case without the reach of the Extension Act.

*Law* involved an injury to a longshoreman who was engaged in the loading process who was injured when the overhead protection rack of the forklift he was operating on the pier alongside the ship came loose and fell on him due to its defective condition. The Supreme Court held that a longshoreman may not recover "in admiralty when he is injured on the dock by his *employer's equipment* at the time he is engaged in the service of a ship located on navigable waters." (At p. 210, 92 S.Ct. at p. 424, emphasis added). They then distinguished *Gutierrez* by saying:

> The decision in *Gutierrez* turned, not on the "function" the stevedore was performing at the time of his injury, but, rather, upon the fact that his injury was caused by an *appurtenance of a ship*, the defective cargo containers . . . (P. 210–211, 92 S.Ct. p. 424, emphasis added).

■ Thus, where the injury is caused by something unrelated to the ship (e.g. defective forklift) there is no jurisdiction, but where it is caused by an appurtenance of the ship (e.g. unloaded cargo) there is jurisdiction. In the instant case, the steel billets had not as yet been rendered cargo and were therefore not an appurtenance of the ship so that this shorebased injury is not within the shoreward extension of admiralty jurisdiction occasioned by the Act as articulated by the *Gutierrez* case. This is so since the ship is charged with warranting the manner in which the cargo is stowed on board, Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704 (2 Cir. 1960) but not the cargo itself, Morales v. City of Galveston, 370 U.S. 165, 82 S. Ct. 1226, 8 L.Ed.2d 412 (1962), and since the billets were not yet an appurtenance of the ship (anymore than was the gondola car in which they were brought alongside) this warranty cannot extend to them nor can the logic of *Gutierrez*. The defect of being improperly placed in the gondola car while alongside the ship awaiting loading onto the ship is not a breach of the stowage warranty (for indeed it was the shipper, not the ship, who stowed the billets in the gondola improperly) nor is it an injury caused by the ship or its appurtenances (since the clear cause of the injury was the manner in which the billets were stowed in the gondola).

As noted in note one, above, Plaintiff also sought to invoke the diversity jurisdiction of this Court, 28 U.S.C. § 1332. However, since Plaintiff has named as a party-defendant a Maryland corporation, John S. Connor, Inc.,[3] there is no complete diversity and thus the Court is without jurisdiction.

It should be noted, that this point was raised by counsel for the defendant United States Steel early now in the proceedings and Plaintiff has made no attempt to conform his pleadings to the requirements of § 1332. Therefore, the lack of diversity, coupled with the lack of admiralty jurisdiction renders this Court without subject matter jurisdiction and the complaint must be dismissed.

3. See transcript February 25, 1972, at p. 4.